IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1997

FILED

October 28, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9606-CC-00222 |
| | ) | |
| Appellee, | ) | SULLIVAN COUNTY |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | HON. R. JERRY BECK, JUDGE |
| ERNEST LEON POWERS, JR. | ) | |
| | ) | (ESPECIALLY AGGRAVATED |
| Appellant. | ) | ROBBERY; FELONY MURDER) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

LYNN DOUGHERTY                        JOHN KNOX WALKUP
HUDSON & DOUGHERTY                    Attorney General & Reporter
131 Eighth Street
P.O. Box 189                          KENNETH W. RUCKER
Bristol, TN  37621                    Assistant Attorney General
                                      425 Fifth Avenue North
                                      2nd Floor, Cordell Hull Building
                                      Nashville, TN  37243

                                      H. GREELEY WELLS, JR.
                                      District Attorney General

                                      PHYLLIS H. MILLER
                                      Assistant District Attorney General

                                      BARRY P. STAUBUS
                                      Assistant District Attorney General
                                      P.O. Box 526
                                      Blountville, TN  37617-0526

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# **OPINION**

The Defendant, Ernest Leon Powers, Jr., was convicted of felony murder, in the perpetration of robbery, and especially aggravated robbery following a jury trial in the Sullivan County Criminal Court. Defendant was sentenced to life imprisonment on the felony murder conviction, and the trial court sentenced him to twenty (20) years for the conviction of especially aggravated robbery. The sentences were ordered to be served consecutively. In this appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, Defendant presents five issues: (1) The trial court erred by denying his motion to suppress statements taken from Defendant by law enforcement officers in violation of his protection against self-incrimination and his right to counsel; (2) the evidence was insufficient to sustain the convictions of felony murder and especially aggravated robbery; (3) the trial court erred by overruling his objection to the admissibility of a photograph of the victim which the Defendant argues the probative value was far outweighed by the prejudicial effect; (4) the trial court erred in denying his motion for new trial based upon an alternate juror falsely swearing during voir dire; and (5) the trial court erred by ordering the sentences to be served consecutively. Finding the evidence to be sufficient and no reversible error, we affirm the judgment of the trial court.

I. MOTION TO SUPPRESS STATEMENT

The Defendant gave two statements to Detectives Dale Boyd and Rick Hodges of the Sullivan County Sheriff's Department, one on September 21, 1994 and another on September 22, 1994. Both statements were taken while Defendant was in custody. On each occasion, Defendant was advised of his rights according to Miranda v. Arizona, 384 U.S. 436 (1966), and the Defendant signed a waiver of those rights on each occasion prior to giving the written and signed statements. Recently, in State v. Odom, 928 S.W.2d 18 (Tenn. 1996), the supreme court held as follows:

> The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

Odom, 928 S.W.2d at 23.

Detective Boyd and Detective Hodges testified at the suppression hearing. Each stated that the Defendant understood everything. He was coherent and understood his rights. The Defendant did not request an attorney. Both officers confirmed that there was no coercion of the Defendant.

Defendant testified that he requested an attorney during the second interview when the officers described all of the evidence they had gathered subsequent to the first interrogation. He claimed to have asked the officers three different times for an attorney. He also claimed that the officers told him the

punishment for first degree murder was the death penalty.  He claimed that Detective Hodges made promises to him regarding the charges and punishment if he would just "come clean."

In its findings of fact, the trial court stated that it had considered all of the proof, and the demeanor of the witnesses, and came to the conclusion that the statements were freely, voluntarily, and knowingly given by the Defendant.

Our review of the record indicates that the evidence does not preponderate against the finding of the trial court.  Therefore, this issue is without merit.

## II.  SUFFICIENCY OF THE EVIDENCE

On the night of September 16, 1994, the victim, Jimmy Lee Cullop, Sr., was found dead on the bedroom floor of his trailer located in Sullivan County, Tennessee.  The victim lived alone.  He was found by one of his daughters and a friend, Eddie McElyea.  The body was in an advanced state of decomposition.  On the preceding day, Mr. McElyea had gone by the house to see the victim but noted his vehicle was gone and assumed that the victim was not at home.  However, Mr. McElyea had noticed flies in the bedroom window and through a partially opened curtain, observed the victim's television in his bedroom was turned on.

The last time that any friend or family member had seen the victim alive was Monday night, September 12, 1994.

At the time of his death, the victim owned a van, a Malibu vehicle, a Chevy Blazer truck, and a Buick Electra automobile. It was well known that the victim would not loan to anyone his Buick Electra, which was yellow in color with a dark vinyl top. He owned two handguns, including a silver-colored .22 caliber nine-shot revolver. A nine-shot .22 caliber pistol with its serial numbers having been ground off was identified by family members and friends as either definitely being, or very similar to, the same type of gun owned by the victim at the time of his death. This pistol was found in the possession of the Defendant at the time of his arrest on September 21, 1994.

Testimony of witnesses and photographs introduced into evidence indicated that various items of personal property located on dressers, nightstands, and a filing cabinet in the victim's home were arranged and located on the furniture in a normal fashion and had not been knocked over or otherwise disturbed. The State's theory was that this indicated that there had been no struggle between the victim and the Defendant prior to the homicide.

According to witnesses, the Buick Electra automobile was missing from the victim's home as early as Tuesday, September 13, 1994. One witness, an acquaintance of the Defendant, stated that a vehicle meeting the description of the Buick Electra was parked at a motel in Nashville, Tennessee where the Defendant was staying following the homicide. Three glasses and two plates which had been used by the victim, his daughter, and her child, on the night of September 12, 1994, were found on the kitchen counter on the night that the victim's body was discovered.

Various witnesses who observed the Defendant on the days following the homicide did not see any cuts, bruises, or abrasions on the Defendant, and he did not mention the existence of any such injuries at the time he gave his statements to law enforcement officers.

The forensic pathologist who performed the autopsy testified that the victim had six "sharp force" wounds on the front of his body and one on the back. Death was due to excessive blood loss into the right side of his chest caused by one of the stab sounds. There were no defensive wounds on the victim's body. The pathologist also testified that a knife which was introduced into evidence and had been taken from the Defendant's personal effects following a search of his motel room, could have caused the wounds to the victim.

One of the victim's daughters testified that he had between $130.00 and $140.00 cash in his possession on Saturday, September 10, 1997, which he kept in his wallet. Neither the victim's wallet nor the missing Buick Electra automobile were ever recovered by law enforcement officers. Also, the Defendant's compound bow was missing following the discovery of the body, and was never recovered.

Also recovered during a search of the Defendant's personal effects was a pair of tennis shoes. When one of the shoes was compared by a forensic scientist from the T.B.I. Lab with blood stains from a portion of the floor of the victim's mobile home, this shoe's tread was found to be consistent with respect to size, shape, and design to a foot print in the blood stains.

The victim's driver's license was found in the bathroom trash can at the victim's home. A woman from Nashville, Tennessee with whom Defendant had resided in motel rooms for a short period of time prior to the homicide testified that the Defendant left for a few days and came back, indicating that he had been to Bristol, Tennessee. When he returned, the witness observed Defendant with a gun identified as the one belonging to the victim.

An acquaintance of the Defendant, William Greg Beavers, who had seen a car fitting the description of the Buick Electra at the motel, also testified that following the homicide, he told the Defendant that he had heard what the Defendant had done. Defendant responded that he was sorry for what he had done. The witness testified that he and Defendant both understood the conversation concerned the victim's death.

After his arrest, the Defendant called Mr. Beavers from the jail and asked him to go to his motel room, recover a red bag and dispose of everything in it. The Defendant stated a knife was in the bag. He also requested the witness to tell anyone who asked, that Mr. Beavers had gone to Bristol and picked up the Defendant. Mr. Beavers told the Defendant that he would not get involved and subsequently gave a statement to police. Mr. Beavers testified that he did have two prior felony convictions for robbery and burglary, and he had pending charges in another county from an incident which occurred in January 1995.

In his first statement to police on September 21, 1994, Defendant indicated that he was in Nashville the week of September 12, 1994, until he left on Friday night to go to Bristol, arriving between 4:00 and 5:00 a.m. Saturday morning,

September 17. He gave a brief summary of his activities while in Bristol over the weekend, none of which incriminated him regarding the homicide of Mr. Cullop. He explained possession of the gun by saying that a friend of his in Bristol named "Jim Cullop" with whom he had worked at Georgia-Pacific, had given him the gun sometime before. He claimed the serial numbers were filed off when the gun was given to him. The Defendant claimed to be a friend and "drinking buddy" with the victim.

In his second statement on the next evening, the Defendant claimed that he was in Sullivan County on September 13, 1994 and went to the victim's house at approximately 10:00 p.m. to ask the victim to loan him a car. He claimed that the victim invited him inside and offered the Defendant a beer. They talked for approximately two hours. When the Defendant asked the victim why Defendant had been laid off from work, he stated the victim immediately changed his attitude and acted like he wanted to fight. Defendant claimed that the victim started pushing him and when the Defendant began to walk toward the front door, the victim went into his bedroom and retrieved a .22 caliber "nickel plated" pistol. Defendant claimed that he grabbed the gun and began wrestling over it with the victim. After wrestling into the bedroom, Defendant observed a long knife lying on the dresser. Defendant stated that he picked up the knife with his right hand and started "sticking him," referring to the victim. When the victim fell, the gun dropped from his hand. Defendant picked up the gun, found the sheath for the knife and placed the knife inside it. Claiming that the victim's billfold was lying on the dresser, Defendant stated that he took $110.00 from the billfold and threw it back onto the bed. He admitted to taking the knife, the gun, and $110.00 cash with him when he left the victim's home. Defendant stated that he went to his

-8-

sister's house and then hitchhiked to the outskirts of Nashville where he walked back to a friend's house.

None of the family members or friends of the victim who were asked, had ever seen a knife in the possession of the victim which resembled the knife found in possession of the Defendant.

There was proof of blood splatters on the ceiling and furniture in the victim's bedroom, along with a large quantity of blood upon the bed and floor. Only one witness was called on behalf of the defense, a neighbor's daughter, who testified that she observed the victim standing at his mailbox at approximately 9:20 a.m. on the morning of September 13, 1994. She stated the victim was wearing clothing which was not the same type of clothing he was wearing at the time of discovery of his body.

There was also testimony which showed that Defendant was in possession of the knife prior to the homicide.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987).

Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

At the time of the commission of this offense, "robbery" was defined as the intentional or knowing theft of property from a person by violence or putting that person in fear. Tenn. Code Ann. § 39-13-401. "Felony murder" was defined as "a reckless killing of another committed in the perpetration of, or attempt to perpetrate any . . . robbery . . . ." Tenn. Code Ann. § 39-13-202.

From the proof at trial, the jury could easily find that the Defendant left Nashville, armed with a deadly weapon, being a knife, and went to the victim's mobile home late at night. There was no physical evidence of a struggle, no defensive wounds upon the body of the victim, and there were various items of personal property missing from the victim's home. This evidence, in addition to proof of the Defendant's flight back to Nashville, along with no apparent injuries to the Defendant, and his conflicting statements, could easily be found by a

-10-

rational trier of fact to prove beyond a reasonable doubt the offense of felony murder in the perpetration of a robbery.

"Especially aggravated robbery" is robbery accomplished with a deadly weapon where the victim suffers serious bodily injury. Again, there was overwhelming proof of the use of a deadly weapon and obvious proof of serious bodily injury to the victim.

The Defendant's statement clearly proved that Defendant had killed the victim. The jury was entitled to reject the Defendant's claims of self defense in his statement to law enforcement officers in light of the physical evidence, and the conflicting statements given by the Defendant. The proof in this case, both direct and circumstantial, is sufficient to show that the killing was in the pursuance of the felony of robbery rather than collateral to it. Farmer v. State, 201 Tenn. 107, 296 S.W.2d 879 (1956); State v. Severs, 759 S.W.2d 935, 938 (Tenn. Crim. App. 1988).

Accordingly, this issue is without merit.

### III. ADMISSIBILITY OF PHOTOGRAPH

Defendant objected at trial to the admissibility of a photograph which depicted the victim's bedroom as it appeared when his body was discovered. In the photograph, the victim's body is lying face-up on the floor to the left of, and parallel to the head of the bed. The photograph is taken by someone standing at the foot of the bed. The picture also includes the chest of drawers, nightstand,

-11-

and portions of other furniture upon which various items of personal property had been placed and were apparently undisturbed. There is blood depicted on the bed, on the floor, the chest of drawers and on portions of the victim's body. The upper portion of the victim's body is somewhat obscured by shadows in the photograph.

After a hearing out of the presence of the jury, the trial court overruled Defendant's objection and ruled that the probative value of the picture was not outweighed by any prejudicial effect.

At trial and on appeal, Defendant argues that the prejudicial effect of the photograph far outweighed its probative value.

In State v. Banks, 564 S.W.2d 947 (Tenn. 1978), the supreme court held:

> The matters to be taken into consideration include the value of photographs as evidence, that is, their accuracy and clarity, and whether they were taken before the corpse was moved, if the position and location of the body when found is material; the inadequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a prima facie case of guilt or to rebut the defendant's contentions. If the inflammatory nature of the photograph is thus outweighed, it is admissible.

Banks, 564 S.W.2d at 951.

The photograph not only shows that items of personal property were not disturbed in the victim's bedroom, but that the bedroom was apparently small as the items of furniture were close together, therefore reinforcing the State's theory that no struggle had occurred. This proof was relevant to rebut the Defendant's

self defense claims asserted in his statement to law enforcement officers. The photograph does show some bloating of the body as a result of decomposition, but it is a distant photographic shot which is not particularly gruesome. The trial court noted that the bloated nature of the victim's body was relevant to establish a time frame for the death.

Following the hearing out of the presence of the jury, the trial court made findings of fact that any prejudicial effect did not outweigh the probative value of the photograph. The record reflects that the trial court properly considered all factors and there was no error in admission of the photograph into evidence. This issue is without merit.

## IV. ALTERNATE JUROR'S RESPONSES DURING VOIR DIRE

Two alternate jurors were initially picked at the beginning of the trial. One of the alternates had to be dismissed due to health problems. During the jury selection process, the other alternate juror responded to the Assistant District Attorney's questioning as follows:

[Assistant District Attorney]: Ms. [alternate juror], have you or

a close friend or relative ever been charged with a crime other than a speeding ticket, or a parking ticket?

[Alternate Juror]: No.

After the trial had concluded, it came to the attention of the Defendant that the alternate juror, at the time she answered the above question during voir dire, had an adopted brother who had been convicted of a serious felony in another

state, and that she was aware of this situation at the time she answered the question.

At the motion for new trial, the alternate juror's brother testified that his sister had visited with him at his place of incarceration prior to her selection for jury service. He further stated that he had never spoken with his sister concerning the Defendant's case. Even though he knew the Defendant, he did not meet him until after the trial had concluded.

The State offered into evidence, and the trial court admitted, without objection from the Defendant, affidavits of the twelve jurors who served, deliberated, and rendered the verdicts. In each of these affidavits, each juror stated that he or she followed the trial court's admonitions and did not discuss or begin deliberations in the Defendant's trial until after receiving jury instructions from the trial court. Furthermore, each juror stated in the affidavit that he or she had no conversations with the alternate juror concerning the merits of the Defendant's case or any conversations with the alternate juror that would have influenced or affected that juror's deliberations in the Defendant's case.

It was undisputed that the alternate juror was dismissed prior to the beginning of deliberations and took no part in the deliberations. The alternate juror was sequestered in the multi-day trial along with the other jurors.

The Defendant argues that the false swearing by the alternate juror raised a presumption of bias and partiality on the part of the alternate, and that he is

thus entitled to a new trial. He also argues that the State failed to rebut the presumption of bias and partiality.

An affidavit of the alternate juror was also admitted into evidence at the hearing on the motion for new trial and in part the affidavit states that the alternate juror did not discuss the merits of the Defendant's case while sequestered with the other jurors.

We agree that a defendant is entitled to a fair and impartial trial under our state constitution and the United States Constitution, and that this right includes that a jury be free from any reasonable suspicion of bias or prejudice. Hyatt v. State, 221 Tenn. 644, 430 S.W.2d 129, 130 (1967).

In State v. Akins, 867 S.W.2d 350 (Tenn. Crim. App. 1993), the defendant was convicted of vehicular homicide by intoxication following a jury trial. During the jury selection process, a potential juror who ultimately served on the jury which reached the verdict failed to disclose information that she had been a probation officer, a DUI probation counselor and had worked in an adolescent alcohol and drug rehabilitation program. This silence was despite persistent, straightforward questioning by both counsel which should have caused her to disclose the information. Our court in that case found actual prejudice to the defendant and reversed the conviction and remanded the case for a new trial. In doing so, the court recognized that when a juror wilfully conceals or fails to disclose any information on voir dire which would reflect on the juror's lack of impartiality, a presumption of prejudice arises. Akins, 867 S.W.2d at 355.

However, our court also recognized that a presumption of bias in some cases can be dispelled by the absence of actual partiality. <u>Akins</u>, 867 S.W.2d at 357.

Upon our review of the record, we agree with the trial court's conclusions that the State was able to overcome any presumption of bias or partiality beyond a reasonable doubt. The overwhelming proof was that the alternate juror did not discuss the Defendant's case with any of the jurors who reached a decision during the time she was sequestered with the other jurors. She did not participate in the deliberations, and even if the Defendant was able to conclude conclusively that the alternate juror would have been partial or biased in reaching a decision, there is no proof that this affected the jury's verdict in this case. While our conclusions might be different if the alternate juror had participated in the deliberations and rendering of the verdict, in the situation before us, we find no reversible error.

This issue is without merit.

## V. SENTENCING

The Defendant does not challenge the length of his sentence for especially aggravated robbery, but does argue that the trial court erred by ordering this sentence to be served consecutively to the life imprisonment sentence for felony murder. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned

upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court found three factors that support the decision that the Defendant's twenty year sentence for especially aggravated robbery should run consecutively to his life sentence for first degree felony murder. The three factors are: (1) The Defendant has an extensive record of criminal activity, Tenn. Code Ann. § 40-35-115(b)(2); (2) the Defendant is a dangerous offender, Tenn. Code

-18-

Ann. § 40-35-115(b)(4); and (3) the Defendant was on probation at the time of sentencing, Tenn. Code Ann. § 40-35-115(b)(6).

Proof of the existence of the factors necessary to justify consecutive sentencing must only be established by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b). Only one factor need be proven to support a consecutive sentence. Tenn. Code Ann. § 40-35-115(b).

We are able to affirm the trial court's decision ordering consecutive sentencing based upon the uncontradicted proof that Defendant was on probation for a felony conviction at the time he committed the present offenses. Because only one ground is required to justify consecutive sentencing, as long as that ground is proven by a preponderance of the evidence, we are able to affirm the trial court's order of consecutive sentencing. See Tenn. Code Ann. § 40-35-115. We also find that from the entire record that consecutive sentencing is necessary to protect the public against further criminal conduct by the Defendant, and the consecutive sentencing reasonably relates to the severity of the offenses committed in this case. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

Finding that the evidence is sufficient to sustain the conviction and that no reversible error occurred, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, Judge

-19-

CONCUR:

_____
JOSEPH M. TIPTON, Judge


_____
JERRY L. SMITH, Judge