Tukkey, J.,
delivered the opinion of the Court.
The plaintiff in error, with one Griffin, was indicted in the Circuit Court of Maury county, for the murder of Samuel Friedman.
That part of the indictment necessary to 'be remarked upon, is in the language: “Did willfully, deliberately, pfemeditatedly, and of their malice aforethought.”
There was a severance, the plaintiff was put upon his trial, convicted of murder in the first degree, and sentenced to be hung. There were motions for a new trial, and in arrest of judgment; both having been overruled, an appeal was taken to this court.
It is first objected, that the court erred in overruling the motion in arrest of judgment, because neither the word unlawfully nor feloniously, is used in the indictment, describing the crime.
The statute describing murder in the first degree is as follows:
“Every murder perpetrated by means of poison, lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or in the attempt to perpetrate, any ar *405 son, rape, robbery, burglary or larceny, is murder in the first degree:” Code, 4598. At common law, there is but one kind of murder. Our statute has divided and defined murder into two kinds. The seeming difficulty, presented in argument upon the phraseology of the indictment, comes, it occurs to us, of an oversight of the history of the crime of murder, and the reasons for the practice of the courts in several ages in its trial.
Blackstone, B. 4, p. 194, says: “The name of murder, as a crime, was anciently applied only to the secret killing of another, which the word moerda signifies in the Teutonic language, and it was defined, ‘homicidium quod nullo vidente, nullo soiente, dam perpetratur,’ for which the vill wherein it was committed, or if that were too poor, the whole hundred, was liable to a heavy amercement, which amercement itself was also denominated murdrum. This was an ancient usage among the Goths in Sweden and Denmark, who supposed the neighborhood, unless they produced the murderer, to have perpetrated, or at least connived at, the murder; and, according to Bracton, was introduced into this kingdom by King Canute, to prevent his countrymen, the Danes, from being privily murdered by the English, and was afterwards continued by 'William the Conqueror, for the like security to his own Normans; and therefore, if, upon inquisition had, it appeared that the person found slain was an Englishman, the presentment whereof was denominated englescherie, the country seems to have been excused from this, burthen. But this difference being totally abrogated by Stat. 14, Edward 3, c. 4, we must now, as observed by Staun-forde, define murder in quite another manner, without *406 regarding whether the party slain was killed openly or secretly, or whether he was of English or foreign extraction.”
"We think there can be no reasonable doubt of, or objection to, the authority of the law-making power in the State to create new offenses, re-defining, or re-describing, those of the common law, by adding to, or taking from, the ingredients required by it, thereby making the offense a statutory one. And, while we have appropriated by statute Sir Edward Coke’s general description of murder in almost identical terms, changing them barely for adaptation to our peculiar institutions, still we have gone further, and in specific' language, described murder in the first degree, thereby totally abrogating the use of such descriptive forms of the common law, and of other States, as are not preserved by our statute, and making it necessary only to describe the crime in the words of the statute, or in words of equivalent or more comprehensive import. We have arrived at this conclusion through a reasoning suggested by the common law.
There is no error in overruling the motion in arrest of judgment.
It is next objected: The court should have granted a a new trial, because of the incompetency of the juror, Richard Burnet. In support of this objection, the affidavit of A. O. P. Nicholson, Jr., is relied upon, and is as follows: “That Richard Burnet, who sat as a juror on the trial of Franklin Riddle, who was tried for murder at the present term of this court, had, previous to said trial of defendant, expressed an opinion that said Riddle was guilty, and should be hung. He also expressed an *407 opinion that Riddle had stolen a mule from him, and then detailed some of the circumstances of the case against Riddle for murdering the pedlar, and expressed the opinion above referred to, to affiant, in conversation about the case; that he did not communicate the above facts until after the trial of the case, either to the defendant above referred to, or his counsel.”
In answer to this, it is insisted that, as the record shows that the juror qualified himself on his voir dire, the law presumes that he did so by a statement of his condition, making known his convictions and the reasons thereof. We can not agree to this conclusion.
The constitution guarantees to the accused, in all criminal prosecutions by indictment or presentment, a speedy, public trial, by an impartial jury; and while this provision has been interpreted not to exclude as a juror a party who has formed or expressed an opinion from rumor, but is able to divest himself of all prejudice and influence of such opinion, (a rare ability of difficult exercise, and more difficult to be understood;) still, the qualification of the juror is an affirmative proposition, held and to be made good by the State, and we dare not presume its correctness as against the life or liberties of a citizen, especially when a strong prima fade case is made against it, and no effort to sustain it.
If it had appeared that the juror did, upon his voir dire, qualify himself under the rule already stated, still he would have come under the rule that jurors may be challenged, propter affeetum, for suspicion of bias or partiality, or for a cause carrying with it prima facie evidence of malice or favor.
While the juror might have qualified himself by re *408 sponses to the usual questions touching opinion based upon rumor, yet he has malice toward the accused, predicated of the fixed conviction that he had stolen his, the juror’s, property. With a juror so circumstanced, we are not prepared to hold the prisoner could have that impartial trial assured to him by the Constitution.
Eeverse the judgment.