(No. 20982.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY GOLDVARG *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1931.*

BENJAMIN C. BACHRACH, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, Harry Goldvarg and Jacob Tatelman, together with one Jack Rossow, Martin Borad and Louis Footlik, were indicted for the murder of Jerome

Israelson, a child, by the commission of an unlawful act and while engaged in the prosecution thereof with felonious intent, which act and its consequences tended to destroy life, in that they feloniously and maliciously caused to be burned a certain building in which said Jerome Israelson then was, causing his death by burning and suffocation. Plaintiffs in error pleaded not guilty, waived a jury and were tried by the court. There is no dispute in the evidence as to the fire or the death of Jerome Israelson.

The evidence shows that plaintiff in error Goldvarg in the month of November, 1930, opened a butcher shop in a one-story building on Kedzie avenue, in the city of Chicago. This building contained six adjoining store rooms. He purchased a set of fixtures from Louis Footlik for about $1200 and paid thereon the sum of $200. He then obtained an insurance policy on said fixtures for $3800. The number of this butcher shop was 3657 Kedzie avenue. No. 3659 Kedzie avenue was occupied as a drug store. In No. 3655 Kedzie avenue, which also adjoined Goldvarg's butcher shop, Irving Israelson and his wife, Dora, father and mother of Jerome Israelson and Homer Israelson, aged about six years and four and a half years, respectively, conducted a dry goods and notion store in the front part of the building and used the rear as a residence. The evidence shows that certain conversations took place between Rossow, Tatelman and Footlik resulting in an agreement that Rossow and Tatelman were to set fire to the premises occupied by Goldvarg so that the latter might collect his insurance of $3800 for fixtures he had purchased from Footlik. Rossow and Tatelman were given $150 in cash and a note for $75 by Goldvarg to scatter gasoline in the butcher shop and set fire to it. Borad assisted in the perpetration of the arson by conveying gasoline to the premises and conveying Rossow and Tatelman to and from the scene of the fire. Rossow and Tatelman, in the presence of Goldvarg, spread large quantities of paper over the fixtures and poured five gal-

lons of gasoline over the paper and fixtures. On the evening of the fire Goldvarg left the store about 5:30 P.M. About 12:30 on that night Borad drove Rossow and Tatelman to the vicinity of the butcher shop and parked his car opposite the rear of the building. Tatelman approached the building and threw a lighted match into the open rear window of Goldvarg's butcher shop and he and Rossow then ran to the car and were taken away by Borad. An explosion and fire followed. The partition between the butcher shop and Israelson's store room was blown into the latter's store, much of it falling on the beds where Jerome and Homer Israelson were sleeping. The drug store and butcher shop and Israelson's store were soon enveloped in flames. Mrs. Israelson was assisted out of the bath-room window by Jacob Kraitsek, a neighbor, but due to the severity of the fire it was impossible to save the two Israelson children, who were burned to death.

Goldvarg testified in his defense, related the conversations between himself, Rossow and Tatelman and told what they did. He admitted that he knew, and that he told Rossow and Tatelman, that the room adjacent to the butcher shop was occupied by Israelson, his wife and two children as a residence. Tatelman did not take the stand. Rossow pleaded guilty and testified for the People, telling the circumstances of the arrangements and the lighting of the fire. Borad also testified as to his part in the crime.

At the close of the People's evidence and at the close of all the evidence plaintiffs in error moved to be discharged from the murder charge, arguing that, at most, the crime was but manslaughter. These motions were denied. Plaintiffs in error were found guilty and each sentenced to forty years' imprisonment in the penitentiary at Joliet.

Two errors are assigned: First, the evidence does not disclose that plaintiffs in error were guilty of murder but if guilty at all are guilty of manslaughter; and second, the sentence was unreasonably severe.

It is argued in support of the first contention that there was no proof of intent on the part of plaintiffs in error or any other person to cause the death of the children killed by the fire and that therefore they are not guilty of murder. Murder is the unlawful killing of another with malice aforethought. Malice aforethought is shown where the killing results from an act done with intent to commit a felony where the commission of such felony is likely to cause the death of another person. This was the common law rule. (*Regina* v. *Serne,* 16 Cox's Crim. 311; 2 Wharton on Crim. Law, sec. 98.) The latter author states the rule to be: "If the unlawful act be a felony it will be murder in all, although the death happened collaterally or beside the principal design." Paragraph 363 of the Criminal Code, (Smith's Stat. 1929, p. 1017,) relating to homicide, provides, in part, as follows: "Provided, always, that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder." Our statute is but declaratory of the common law. The statute does not require proof of specific intent. The crime committed is murder where the unlawful act is prosecuted with felonious intent and death ensues.

It is not contended that plaintiffs in error are not guilty of arson, but the argument is that the consequences of arson do not naturally tend to destroy life of a human being. The setting of the fire is admitted, but the argument is that, the building being but one story in height, the outer walls constructed of brick and the store rooms separated by gypsum blocks, a fire would not naturally tend to destroy the life of a human being in an adjoining room. This contention cannot be sustained. It is a matter of common knowledge that gasoline is highly volatile and when poured on paper, rags or like substances throws off a vapor or gas which

mixes with the air in the room and forms a highly explosive ingredient, and when this comes in contact with an open flame it explodes. If sufficient gas is generated no walls will withstand the force of such explosion. It may be further observed that in this case it is clearly shown by Goldvarg's testimony that plaintiffs in error knew there was danger that some member of the Israelson family would be killed. He testified that he several times told Tatelman that there were children living in the adjoining room in the building, and that he was not afraid for himself, as he did not live back there, but he was afraid for anybody that lived in the premises. Plaintiffs in error's counsel also argues that the killing of Jerome Israelson was not committed in the prosecution of a felonious intent. Plaintiffs in error, however, admit setting fire to the butcher shop. This was a felony. Where an action unlawful and felonious in itself is done with deliberation and intent to do mischief, either particularly or indiscriminately, and death ensues, either contrary to or beside the original intention of the party so committing the act, the crime is murder. (*Mayes* v. *People,* 106 Ill. 306.) The unlawful burning of the butcher shop, as result of which human life was taken, presents a clear case of murder. The trial court was justified in finding plaintiffs in error guilty of murder.

The second assignment of error is based on the penalty inflicted, and the argument is that it is too severe and constitutes an abuse of discretion of the trial court. It is sufficient to say that the statute fixes the punishment for murder at death or imprisonment in the penitentiary for life or for a term of not less than fourteen years. The sentence of forty years is within the statutory limits. The crime was committed in furtherance of a felonious intent, in utter disregard of the probable consequence on human life. The residence of the Israelsons was separated from the butcher shop only by a partition of gypsum blocks. Plaintiffs in error knew these children were of tender years

and would doubtless be in bed and asleep at the time the fire was set. No claim is made that plaintiffs in error did not have a fair and impartial trial. This court cannot say that the punishment is disproportionate to the nature of the offense. *People* v. *Krotz,* 341 Ill. 214.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*