Clyde Farmer

*v.*

State of Tennessee.

(*Knoxville,* September Term, 1956)

Opinion filed December 7, 1956.

W. H. INMAN and JAMES K. MILLER, Morristown, for plaintiff in error.

NAT TIPTON, Advocate General, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error, who will be later referred to as the defendant, has appealed from a conviction of murder in the first degree, his punishment being fixed by the jury at 25 years in the State penitentiary.

The indictment under which he was tried and convicted contained two counts. The first count charged that the

defendant did "unlawfully and feloniously, willfully, deliberately, maliciously, premeditatedly, with malice aforethought kill and murder Ray Carter, a reasonable creature in being, and under the peace of the State."

The second count reads as follows:

"The Grand Jurors for the State and County aforesaid, upon their oath present and say that Clyde Farmer on or about the 3 day of February 1956, in the State and County aforesaid did unlawfully and feloniously kill and murder Ray Carter, a reasonable creature in being, and under the peace of the State, in the perpetration of the crime of arson, that of feloniously, willfully and maliciously burning the dwelling house of Steve Holdway. Against the peace and dignity of the State of Tennessee."

There was a second indictment returned by the Grand Jury, on the same day as the first, charging the defendant with the crime of arson, in that he willfully and maliciously set fire to or burned the dwelling house of Steve Holdway.

When the case came on for trial the trial judge appointed counsel to represent the defendant, and upon the statement of the District Attorney General that he would ask for the death penalty, he appointed a Court Reporter, one Margo Brown, to take down and prepare the record of all proceedings on behalf of the said defendant. We thus have a correct transcript of the record before us. The counsel appointed by the trial judge, James K. Miller and W. H. Inman, of the Morristown Bar, have ably represented the defendant, and deserve the unqualified commendation of the trial judge and also this Court.

Upon motion of the defendant's counsel the second indictment, charging the crime of arson, was quashed.

The counsel have filed twelve assignments of error. The defendant's counsel concede that most of them need not be considered *seriatim*. But contention is made that certain errors were committed in the trial of the case. These will be considered following a statement of the evidence upon which the defendant was indicted and convicted.

On the night of February 3, 1956, the residence of Madge Carter was destroyed by fire which resulted in the death of her youngest child, one Ray Carter who was two and a half years of age at the time. The house was constructed of material that was very inflammable and consisted of three small rooms; it is referred to by some of the witnesses as a "shack". Madge Carter lived in this house in Morristown with her five small children, all of whom were illegitimate. The defendant had been dating her for several months prior to this tragedy. He was 35 years of age and unmarried. The theory of the State is that he was "shacking up" with the Carter woman and that he set fire to her house and as a result the deceased, who was asleep in the building, was burned to death.

The Carter woman testified that upon the afternoon of February 3rd she and the defendant had an argument and that he assaulted her and as a result of this assault she took her children to the home of a neighbor. They returned home about 7:00 p.m. that night and apparently retired for the night. About midnight one of her children, a six year old boy, was taken by her to an outdoors toilet. Shortly after they returned to the house the defendant pushed the door open, announced his identity, and came in and created a disturbance. There was a struggle between Madge and the defendant and she eluded him by taking flight to the home of a neighbor, taking her two

older children along with her. The deceased at that time was asleep as heretofore stated. Upon reaching the neighbor's house she called the police. Within a few minutes thereafter she saw the defendant enter her house and a few minutes later noticed that the house was on fire.

A greater part of the State's proof purports to show that the fire was of an incendiary origin, and that the defendant was the guilty agent. Sheriff Morrison and another officer, Mr. Travis, testified that the defendant told them that when he went back to this house he pulled some paper off the wall, wadded it up, lit it with a match and threw it down on the floor. In his testimony he admitted his relationship with the Carter woman and that he assaulted her on the afternoon preceding the burning of the house. He denied making the above statement to the Sheriff; and also denied being at the house and that he set fire to it.

We think the evidence does not preponderate in favor of the defendant's innocence of this crime.

Contention is made by counsel that since the arson indictment was quashed the defendant could not be convicted under the pending indictment. But this assignment of error must be overruled on the authority of *Sullivan v. State*, 173 Tenn. 475, 121 S.W.2d 535. The fact that the second indictment for arson was quashed in no way barred the State's right to prosecute the defendant for the crime of murder under the pending indictment for that offense, and show that it was committed in the perpetration of the crime of arson.

It is next urged by counsel that it was error for the court to permit corroborating testimony of the

six year old child of Madge Carter. This testimony by the Chief of Police was to the effect that on the day after the alleged homicide this child had narrated to him substantially the same story that he had given from the witness stand.

Generally speaking it is not permissible to corroborate any witness by proof of consistent statements. But there are exceptions to this general rule. One is that where it is insisted that the testimony of a witness is the result of a recent influence it is permissible to show that prior to the exercise of such influence the witness made statements consistent with his current testimony. This finds support in *Queener v. Morrow*, 41 Tenn. 123; *Legere v. State*, 111 Tenn. 368, 77 S.W. 1059; and *Sutton v. State*, 155 Tenn. 200, 291 S.W. 1069. In the instant case it was sought to show on cross-examination that the testimony of the child was the result of what his mother and counsel had hold him to say.

It is next insisted that a new trial should have been granted because a brother-in-law of the Sheriff served on the jury, this relationship being unknown to the defendant or his counsel when he was accepted. This fact is not a ground for challenge for cause. Moreover the objection, coming after the verdict, was *propter defectum*. This question was fully considered by the Court in *Walker v. State*, 118 Tenn. 375, 99 S.W. 366, and later decisions. The assignment is overruled.

The error next assigned is that the trial judge suggested to the jury their verdict. Upon this question the record shows that when the jury returned into court to report their verdict the foreman stated they found the defendant guilty. The trial judge inquired if they found him guilty of murder in the first degree, to which the

foreman replied in the affirmative and that they fixed his punishment at 25 years in the penitentiary. We think this was only a mere inquiry as to what grade of homicide they found the defendant guilty and was not a suggestion as to what their verdict should be. The assignment is overruled.

■ We find no merit in the contention that counsel was not permitted to ask Madge Carter to name her numerous paramours. She had practically admitted that she was a prostitute and hence the names of her male associates were not important in determining her credibility.

■■ The most serious question made on this appeal is yet to be considered. The appointed counsel for the defendant have urged upon the Court in oral argument, though with little elaboration on their brief, that the defendant could not be convicted of murder in the first degree, since the elements necessary to a conviction of that grade of felonious homicide are lacking.

We find no evidence in the record tending to establish the fact that the defendant knew that the deceased, or any person, was in the house at the time it was destroyed by fire. This being true the question arises as to whether or not this homicide was perpetrated "willfully and with deliberation, premeditation and malice aforethought". This issue cannot be ignored even though it is not brought to the Court's attention by any specific assignment of error. Code Section 40-3409, T.C.A.

Adverting to the indictment, which is copied in this opinion, it appears that the first count is in conformity with Code Section 39-2401, T.C.A., which is declaratory of the common law. The second count is drawn in strict conformity with Code Section 39-2402, T.C.A. At com-

mon law there was but one kind of murder. The foregoing section of the Code, 39-2402, has divided and defined murder in two kinds. *Riddle v. State,* 50 Tenn. 401.

*"Effect of statute on common-law rules.*—No new offenses are created by statutes with relation to murder in the perpetration of, or attempt to perpetrate, a felony or named felonies; the common-law offense remains the same, having been divided into degrees only. They only prescribe a severer punishment when murder is committed in the attempt to perpetrate a felony, on account of the enormity of the offense, and fix absolutely the degree of the offense, usually as murder in the first degree." Wharton on Homicide, 3rd Ed., Section 118.

When it appears, as in the instant case, that the accused was tried, and convicted under Section 39-2402 of the Code, that is, that he committed murder while perpetrating the crime of arson, it is not necessary that the State prove an intention to kill, or that it was committed willfully, deliberately, premeditatedly and with malice aforethought. The statute supplies the elements necessary to a conviction of murder in the first degree. In other words, "the premeditated intent to commit a felony or other criminal act is, by implication of law, transferred from that offense to the homicide actually committed, so as to make the latter offense a killing with malice aforethought constituting murder in the first degree." Wharton on Homicide, 3rd Edition, Section 119; 26 Am. Jur. (Homicide), Section 39, page 183.

To render a killing murder in the first degree under statutes making it murder in the first degree to kill in the perpetration of a felony, or specified felonies, it must have been done in pursuance of the unlawful act,

and not collateral to it. In other words, ''The killing must have had an intimate relation and close connection. with the felony (in the instant case arson), and not be separate, distinct, and independent from it; * * *.'' Wharton on Homicide, Section 126.

Considering now the contention that the homicide in the case at bar was unintentional, the defendant not being aware of the presence of the deceased in the building, the weight of authority is that this is not available as a valid defense.

In addition to the foregoing authority, the question is fully annotated in *State v. Glover,* 330 Mo. 709, 50 S.W. 2d 1049, 87 A.L.R. 400.

Several of the cases cited and discussed in *State v. Glover, supra,* seem to turn on the question of whether or not the accused had reason to anticipate that some injury, or possible death, would result from the intentional burning of the building. But the court rejected this as a controlling factor.

Among the stronger cases relied on in the Glover case in support of the State's contention that malice and premeditated intention to kill is supplied by the language of the statute are the following: *Reddick v. Commonwealth,* 33 S.W. 416, 17 Ky. Law Rep. 1020; *State v. Meadows,* 330 Mo. 1020, 51 S.W.2d 1033; *People v. Goldvarg,* 346 Ill. 398, 178 N.E. 892.

While there is no evidence that the defendant had any actual knowledge that the deceased was in the building, nevertheless he knew he was setting fire to a home at midnight and that it was the home of Madge Carter and her children. She had left it only a few minutes before the fire with two of the children. The defend-

ant should have known that some one or more of the children were asleep in the building, and that deceased, two and one-half years old, could not possibly escape from the burning building. It results that there is sufficient causal connection between the killing of the deceased and the crime of arson to make out a case of murder in the first degree.

The case of *Bratton v. State,* 29 Tenn. 103, is not applicable since the homicide was not committed in the perpetration of a felony specified in the statute, Code Section 39-2402, T.C.A. It is clear from this opinion, and our cases reaffirming the principle of law announced, that where a homicide is committed, *but not in the commission of some one of the felonies specified in the statute, but some other felony,* "Proof must be adduced to satisfy the mind, that the death of the party slain was the ultimate result which the concurring will, deliberation and premeditation of the party accused sought." *Bratton v. State, supra.*

We find no error in the record and the judgment of the trial court is affirmed.