## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
## JANUARY SESSION, 1997

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | ) | |
| | ) | No. 02C01-9602-CR-00058 |
| Appellee | ) | |
| | ) | SHELBY COUNTY |
| vs. | ) | |
| | ) | Hon. **ARTHUR T. BENNETT**, Judge |
| **STEVEN B. BUGGS**, | ) | |
| | ) | (Murder in the Perpetration |
| Appellant | ) | of a Robbery) |

For the Appellant:

**A. C. WHARTON, JR.**
District Public Defender

**W. MARK WARD**
Asst. Public Defender
147 Jefferson, Ste. 900
Memphis, TN  38103

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**SARAH M. BRANCH**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**WILLIAM GIBBONS**
District Attorney General

**THOMAS HENDERSON**
Asst. District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN  38103

OPINION FILED: _____

**AFFIRMED**

**David G. Hayes**
Judge

**<u>OPINION</u>**

The appellant, Steven B. Buggs, appeals the verdict of a Shelby County jury finding him guilty of the offense of murder in the perpetration of a robbery. He was sentenced to a term of life imprisonment. The sole issue presented on appeal is whether the evidence is sufficient to sustain his conviction.

After a review of the record, we affirm the judgment of the trial court.

**I. Background**

On June 30, 1994, a Shelby County Grand Jury returned a two count indictment charging the appellant with murder in the perpetration of robbery and, in the alternative, premeditated first degree murder. On May 15, 1995, the appellant's case proceeded to trial, during which the following facts were developed.

In June, 1994, Karen Beasley, a twenty-six year old mother of three children, was employed as a certified nursing assistant at the Overton Park Health Care Center, a nursing home. Through her employment, she met and began dating the appellant, also a certified nursing assistant at the nursing home. Approximately three weeks following the commencement of their relationship, the appellant, who was married at the time, moved in with Ms. Beasley. The two shared a duplex located at 2425 Shasta Street in Memphis.

On June 21, the appellant and Ms. Beasley received their paychecks from the nursing home. The appellant testified that his paycheck was in the amount

of $500.00 and Ms. Beasley's paycheck was in the amount of $270.00. At the end of their respective shifts, at approximately 3:00 p.m., the couple "cashed" their paychecks, paid Ms. Beasley's car note, and visited with Ms. Beasley's children who were staying at her mother's house. The couple then returned to the duplex on Shasta Street. The remaining cash money from their paychecks was placed in a dresser in the parties' bedroom.

Shortly after arriving home, Ms. Beasley left the residence in her car, a 1986 blue Dodge Lancer. While she was gone, the appellant smoked marijuana, drank beer, and purchased a $25 rock of crack cocaine, which he also smoked. When Ms. Beasley returned, the appellant left, in Beasley's vehicle, to purchase some chicken from a nearby Kentucky Fried Chicken restaurant. However, rather than purchasing the chicken as planned, the appellant proceeded to a "drug area" where he "picked up a prostitute" and smoked $100 worth of crack cocaine. When he had exhausted this supply, he attempted to make another purchase. However, the "dope man" had "run out of crack rock," but sold him "something that looked like crack rock." The appellant explained that he later discovered that this substance was "ice." He related that "the 'ice' got [him] higher than crack," tunneling his vision and "stopp[ing] up" his hearing.

Intoxicated from his abuse of crack cocaine and "ice," the appellant returned to the duplex between 11:30 p.m. and 12:00 midnight in order to obtain more money to buy more crack cocaine. The appellant testified that, upon entering the duplex, he was confronted by an upset Beasley. In his statement to the police, which was read to the jury, he stated, "Karen was mad . . . . Karen was talking but [I] couldn't hear her . . . ." Unable to hear her, he contends that he "snapped." He went into the kitchen and obtained a large knife. The appellant then returned to the living room where he began stabbing Beasley. After stabbing her repeatedly, he went into the bedroom, where he took the cash

3

remaining from their payroll checks. He then left, in Beasley's car, and returned to the "drug area," where he smoked crack cocaine with a prostitute for the remainder of the night.

The next morning, June 22, the appellant returned to the duplex. Seeing Beasley on the floor, he pulled her body into the hallway, where the body would be less visible from the windows. The appellant then gathered his clothes along with two televisions, a hair dryer, and a lamp, all belonging to Beasley. Later that afternoon, at around 1:40 p.m., he pawned the two televisions at American Loan, in Memphis. The following day, June 23, he pawned the hair dryer and the lamp at Cash American Pawn, also in Memphis. The appellant received a total amount of $125 in exchange for the items. With this money, he again purchased and smoked crack cocaine. Then, realizing that he needed to leave Memphis, he took the victim's Dodge vehicle and first traveled to Victoria, Mississippi. However, because this location was too close to Memphis, he later drove to Milwaukee, Wisconsin, where he stayed with relatives. Several days later, the appellant was arrested at his aunt's house in Milwaukee.

Dr. Jerry Francisco, county medical examiner for Shelby County, performed the autopsy of Karen Beasley. At trial, his findings revealed that Ms. Beasley had received multiple stab wounds to her chest and back, which resulted in her death. Additionally, Ms. Beasley had suffered cuts to both knees and hands, which appeared to be defensive wounds.

Dr. Wyatt Nichols, a clinical psychologist with the Mid-town Mental Health Center, completed two evaluations of the appellant, on November 23, 1994, and May 10, 1995. Although he determined that the appellant was both sane and competent to stand trial, he stated that "due to [the appellant's] intoxication [at the time of the crime], his judgment was impaired, his ability to understand the

4

consequences of what he was doing was impaired, and that he's more likely to be impulsive, he's more likely to act out feelings that he might have . . . ."

Based upon this evidence, the jury returned a verdict finding the appellant guilty of murder in the perpetration of robbery.

## II. Sufficiency of the Evidence

In his only issue, the appellant contends that the evidence against him is insufficient, as a matter of law, to justify a rational trier of fact finding him guilty of murder in the perpetration of a robbery.  Specifically, he contends that the proof fails to establish that the appellant's intent to rob the victim was formed prior to her death.  In sum, it is the appellant's position that the killing, which he does not dispute, was collateral to, rather than "in the perpetration of," the murder.[1]  The State argues that the appellant's theft of the victim's money immediately after the murder raises a "strong presumption" that he had the intent to commit a felony at the time of her murder, and, thus, the evidence sufficiently supports the conviction.  Mullendore v. State, 191 S.W.2d 149, 152 (Tenn. 1945).

When there is a challenge to the verdict based upon the sufficiency of the evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994);  Tenn. R. App. P. 13(e).  We do not reweigh or reevaluate the evidence; these are issues resolved by the trier of fact. State v.

---

[1]The sole defense theory at trial was that the homicide was of a lesser grade than first degree murder.

5

Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Furthermore, a guilty verdict accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Guilt may be predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Moreover, the appellant bears the burden of proving that the evidence is insufficient to support the jury verdict in his case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1992).

The appellant was convicted of felony murder in the perpetration of a robbery. Felony murder is defined as "[a] reckless killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery . . . ." Tenn. Code Ann. § 39-13-202(a)(2) (1993 Supp.). (emphasis added). Our courts have held that, in order to fall within the provisions of the felony murder statute, the homicide must have been committed "in pursuance of the unlawful act, and not collateral to it." State v. Farmer, 296 S.W.2d 879, 883 (Tenn. 1956). "The killing must have had an intimate relation and close connection with the felony and not be separate, distinct, and independent from it." Id. (citing Wharton on Homicide, § 126). In other words, the felony murder statute applies when the underlying felony and the homicide were parts of one continuous transaction, and were closely connected in point of time, place, and causal relation. Id. Accordingly, the killing may precede, coincide with, or follow the felony, and still be done in the perpetration or commission of the felony. 40 C.J.S. Homicide §53 (1991); see also WAYNE R. LAFAVE ET AL., CRIMINAL LAW §71, at 555 (1972). However, mere coincidence in time is insufficient; the killing must take place during the facilitation of the felony, and the felony or attempt thereof must be the cause of the victim's death. 40 C.J.S. Homicide § 53.

6

In the present case, the appellant argues that the victim's death was collateral to the robbery because he did not intend to rob her at the time of the killing. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (1991). Moreover, the Tennessee Supreme Court has held:

> [E]vidence that a person took the property of another after killing him, and appropriated it to his own use, is sufficient to sustain a conviction of murder in an attempt to commit a robbery, though no previous purpose to rob appears, since his act raises a strong presumption that he intended to do what he afterwards voluntarily did.

Mullendore, 191 S.W.2d at 152 (quoting *Wharton on Homicide*, 3d. Ed., 188).

Although, there is no longer a presumption of intent,[2] the question of whether the appellant formed an intent to rob before the victim was killed or after her death occurred, is a question of fact for the jury. Because intent is a state of mind, it is not commonly proven by direct evidence, but may be inferred from the character of the appellant's acts and the circumstances surrounding the commission of the offense. State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

The facts presented at trial reveal that the appellant returned to the duplex he shared with the victim in order to obtain additional money for drugs. He was confronted by the victim, who was angry. He went to the kitchen for a knife, returned to the living room, and repeatedly stabbed the victim to death. Immediately after the murder, the appellant went to the bedroom and removed money, belonging to both him and the victim, from the bedroom dresser. He then left the duplex and returned to the "drug area" in the victim's vehicle. The next day, the appellant returned to the duplex, concealed the victim's body, and

---

[2]Sandstrom v. Montana, 442 U.S.510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

7

took numerous additional items belonging to the victim, which he later pawned for money.

From this evidence, we conclude that the robbery and the homicide were parts of one continuous criminal transaction, and were closely connected in point of time, place, and causal relation. This inference is supported by the appellant's exercise, immediately after the killing, of control over the property of the victim. Mullendore, 191 S.W.2d at 152. Accordingly, we find that there is considerable circumstantial evidence from which a jury could rationally infer that the murder of the victim was committed in the perpetration of robbery. See. e.g., State v. Rushing, No. 01C01-9501-CR-00020 (Tenn. Crim. App. at Nashville, Feb. 13, 1996), perm. to appeal denied, (Tenn. July 22, 1996); State v. Hugh Williams, No. 02C01-9209-CR-00020 (Tenn. Crim. App. at Jackson, Oct. 12, 1994).

For the foregoing reasons, the judgment of conviction is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOE B. JONES, Presiding Judge

_____
THOMAS T. WOODALL, Judge

8