FILED

05/15/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 3, 2020

## STATE OF TENNESSEE v. ANTHONY OLIVO

**Appeal from the Criminal Court for Shelby County**
No. 18-01853    Lee V. Coffee, Judge

_____

### No. W2019-00530-CCA-R3-CD

_____

Defendant, Anthony Olivo, was convicted, after a jury trial, of first degree murder during the perpetration or attempt to perpetrate a theft, first degree murder during the perpetration or attempt to perpetrate a robbery, attempted especially aggravated robbery, felon in possession of a firearm, and felon in possession of a handgun. The trial court merged the two first degree murder convictions and sentenced Defendant to life in prison. The trial court sentenced Defendant to twelve-years for the attempted especially aggravated robbery, eight-years for the felon in possession of a firearm conviction, and to four-years for the felon in possession of a handgun conviction. The two possession convictions were merged. The trial court ordered that the sentences be served consecutively for a total effective sentence of life in prison plus twenty years. Defendant filed a motion for a new trial which was subsequently denied. Defendant appeals the judgment of the trial court by arguing that the trial court erred in denying the motion in limine regarding prejudicial statements made by Mario Brodnax, that the trial court erred in denying the motion to bifurcate the felon in possession of a handgun charge, and that the evidence was insufficient to support Defendant's convictions. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Anthony Olivo.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alanda Dwyer and Kevin McAlpin, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

A Shelby County grand jury indicted Defendant and a co-defendant, Andre Bowen, in Count 1 with first degree murder during the perpetration or attempt to perpetrate a theft, in Count 2 with first degree murder during the perpetration or attempt to perpetrate a robbery, and in Count 3 with attempted especially aggravated robbery.[1] Defendant was charged alone in Counts 6 and 8 with a felon in possession of a firearm, and in Counts 7 and 9 with a felon in possession of a handgun.

A jury found Defendant guilty in Counts 1, 2, 3, 6, and 7. Counts 8 and 9 were dismissed by the State. The trial court merged Counts 1 and 2 and sentenced Defendant to life in prison. The trial court sentenced Defendant to twelve years for Count 3. The trial court merged Counts 6 and 7, and sentenced Defendant to eight years in Count 6 and four years in Count 7. The trial court ordered that the sentences be served consecutively for a total effective sentence of life plus twenty years.

Before the trial, Defendant stipulated that he had previously been convicted of felony drug offenses and was aware that it would be a felony to possess a firearm. The trial testimony established that the victim, Susan McDonald, was meeting her friend, Jane Rezos on the morning of August, 1, 2015. The victim pulled into Ms. Rezos's driveway shortly after 6:00 a.m. and notified Ms. Rezos by text of her arrival. Ms. Rezos had been in her car, out searching for her runaway dogs, and called the victim instead of texting her response. Ms. Rezos indicated that she was just around the corner and that she would be back to her house shortly. The two were on the phone when Ms. Rezos heard a rustling noise and what she thought was the victim's phone dropping. Ms. Rezos next heard the victim yell and then heard a gunshot. Richard Smith and Margaret Orthaver, neighbors of Ms. Rezos, also heard the gunshot. Ms. Orthaver heard a female voice say "[g]et away from me[.]" After he heard the gunshot, Mr. Smith heard someone saying "[o]h, my God, oh, my God, oh, my God."

After hearing the gunshot, Ms. Orthaver looked out her kitchen window and saw "a lady laying on the driveway." Ms. Rezos drove around the corner and saw a dark car right beside her driveway. She saw the car drive away and then saw the victim lying in the driveway. Ms. Rezos attempted to help the victim and told her neighbor[2] to call 9-1-1. Ms. Rezos saw a gun lying beside the victim. The victim died in the driveway as a

---

[1] Counts 4 and 5 pertained only to Mr. Bowen.
[2] Both Ms. Rezos and Ms. Orthaver refer to "Leslie." Neither mentions "Leslie's" last name, but it appears from the record that she was Ms. Rezos's next door neighbor.

result of a gunshot wound to her head. The autopsy showed that the victim was shot from no less than four feet away. The autopsy recovered a bullet jacket and a lead fragment from the victim's head.

Mr. Smith and Ms. Orthaver testified to seeing a dark car speeding through the neighborhood. Each saw the car go towards a dead end road and then saw the car return going the other way to leave the neighborhood. Mr. Smith opined that the car was going sixty to seventy miles per hour. Mr. Smith described the car as a dark Lexus with tinted glass. Neither could identify who was in the car.

Memphis Police Officer Eric Ferrante was the first officer to arrive on the scene at Ms. Resoz's driveway, where the victim was killed. He saw Ms. Rezos with the victim's head in her lap. He also saw several other people standing around. Officer Ferrante isolated Ms. Rezos and obtained the victim's cell phone from a bystander. He remained on the scene until homicide investigators arrived.

Memphis Police Officer Lee Walker, a crime scene investigator, sketched diagrams of the scene and collected evidence at the scene of the shooting. Officer Walker identified photographs he took of the victim and the surroundings. He collected the victim's gun and identified photographs he had taken of it. No rounds had been shot from the victim's gun on the morning of the victim's death. No latent fingerprints from Defendant were found at the scene or on the victim's car. All evidence that Office Walker collected was packaged and sent to the police evidence room.

Memphis Police Officer James Fort obtained video surveillance footage from a neighboring house. Officer Fort identified a dark car driving by the video camera twice within a few minutes. Officer Fort was unable to identify any passengers in the car.

Retired Memphis Police Sergeant Brad Webb, was the case coordinator. Sergeant Webb received a Crimestopper's tip that Defendant was responsible for the shooting. The tip included a description of Defendant's car and where Defendant could be located. Sergeant Webb identified Defendant's cell phone number and issued a subpoena for the cell phone records. Cell phone mapping did not trace the exact location of the cell phone but put Defendant's cell phone in the neighborhood of the shooting at the time of the shooting and the placement of the 9-1-1 call.

Sergeant Webb identified a photo of Defendant with a cut on his head. Sergeant Webb identified photos of the victim's car that were taken the morning of the shooting. The windows on the victim's car appeared tinted in the photograph, but the windows were not actually tinted. Sergeant Webb also identified a photograph of a police car and the victim's car. Each car's windows also appeared tinted, although they were not.

Sergeant Webb participated in Mr. Bowen's interview. Mr. Bowen explained that he and Defendant were riding around on the day of the victim's death with plans of stealing a license plate. Mr. Bowen was sitting in Defendant's car at the time the victim was shot. Mr. Bowen heard one gunshot, turned his head and saw Defendant running to the car. Mr. Bowen described Defendant's car as a dark gray, Lexus GS300.

Memphis Police Lieutenant Robert Wilkie obtained Defendant's statement at the police department. Defendant admitted that he drove around with Mr. Bowen looking for a license plate to steal and was present when the victim was shot but denied killing her. Defendant denied having any type of weapon. He stated that the victim had a gun and shot once, and he drove away. Defendant told Robert Knight some of the details regarding the shooting. Defendant apologized to the family of the victim and stated that he never meant for the shooting to happen.

Dr. Marco Ross testified as an expert in the field of forensic pathology. The autopsy showed that the victim was shot from no less than four feet away. The autopsy recovered a bullet jacket and a lead fragment from the victim's head. The victim died of a gunshot wound to the head, and her manner of death was classified as a homicide.

Mario Brodnax[3] had known Defendant for fifteen to twenty years. Mr. Brodnax gave a written statement to police on August 18, 2015. Mr. Brodnax initially could not recall the date he told police in his statement that he had spoken to Defendant. Defense counsel objected to Mr. Brodnax's reading aloud directly from his statement. Mr. Brodnax was told by the trial court to look at it and "not read it." The trial court asked Mr. Brodnax if it "help[ed] him remember, refresh your memory, as to when you talked to police about what you knew about this incident?" After some back and forth between the trial court and Mr. Brodnax, Mr. Brodnax said it did refresh his memory. The assistant district attorney followed up and asked Mr. Brodnax again if when he read the statement did it "refresh your recollection as to the conversations that you had with the police on [August 2nd]," to which Mr. Brodnax said that it did.

Mr. Brodnax admitted that he told police that he thought Defendant was responsible for the shooting of Ms. McDonald. When asked "why do you think so," defense counsel again objected to Mr. Brodnax reading directly from the statement. The trial court reminded Mr. Brodnax that he "cannot read the statement itself into the record." After noting that Mr. Brodnax had "placed his statement on the witness stand," the trial court invited the assistant district attorney to proceed.

---

[3] The record contains 2 different spellings of his last name, Broadnax and Brodnax. We will use the spelling Brodnax as spelled by Mr. Brodnax during his testimony at trial.

After again appearing to be reluctant to testify about the contents of his written statement, the assistant district attorney advised the trial court at a bench conference, that it was his intent to "very soon start to impeach [Mr. Brodnax] based upon that statement as well." The trial court advised the assistant district attorney to "lay a proper foundation if he continues to deny or equivocate as to what he said or what was said…. You may impeach him with the contents of the statement once a proper foundation has been laid."

Upon being asked by the assistant district attorney if Defendant ever indicated to him he was going to Cordova in order to possibly commit a crime, Mr. Brodnax responded, "no sir." The assistant district attorney, without further objection, immediately asked Mr. Brodnax to read the following response from a portion of Mr. Brodnax's written statement into the record:

> I saw [Defendant] on Sunday, the 2nd. He had a cut on his forehead. He said he got it getting in – getting in the car. I asked [Defendant], "What happened?" [Defendant] said, "Between me and you, I got two under my belt right now." I knew that meant [Defendant] had two bodies. [Defendant] said he had a gun in the car, but I didn't see it that day. I last saw [Defendant] with a gun a few months ago. It was black. The car [Defendant] was in that day was a gray Lexus with a temporary tag on it. [Defendant had] owned the car for a few years, but [it had] been in the transmission shop for several months. [Defendant] told me he [ ] had the car back for a few weeks, or a week. Later that week, I saw the news video for the car, and was sure it was the Lexus, and with what [Defendant] had said that day, I kind of knew it was him.

The full written statement was not entered into the record as an exhibit. Mr. Brodnax agreed that his statement included the reference "two under the belt." When the assistant district attorney asked Mr. Brodnax what he thought "I got two under my belt right now" meant, defense counsel objected to "speculation." The trial court instructed the jury:

> I will overrule the objection as to -- and, ladies and gentlemen, this statement is not being offered as to what [Defendant] actually thought or what was in [Defendant's] mind, because a witness cannot testify to that, but a witness can testify and give his impression, give his opinion, on subjects that - the questions that are being asked, and this is an opinion about something that is rationally based on the perception of a witness. So, Mr. Brodnax can give his opinion as to what he thought that statement was.

This is not saying that is what was in [Defendant's] mind. Does everybody understand that?

Mr. Brodnax continued that "under my belt" normally means that "they be done done something to somebody, you know, be done hurt somebody or something, I don't know." Mr. Brodnax later said the gun he saw with Defendant was a 9 millimeter or .40 caliber handgun. He admitted that he saw Defendant with a gun sometime before the incident.

Mr. Knight knew Defendant for a number of years prior to the incident. Defendant told him that he was involved in the shooting of the victim. Mr. Knight was at Defendant's mother's house when Defendant arrived, talking on the phone. During the phone conversation, Defendant stated, "it's on the news." Mr. Knight changed the television channel to show the news. Mr. Knight saw Defendant's car on the news. The news story was about the homicide of the victim. Defendant then told Mr. Knight that "We had to kill a [m****er f***er]." Defendant told Mr. Knight that they saw the victim withdraw money from a bank, and followed her, and planned to rob her. When the victim pulled in the driveway at Ms. Resoz's house, Defendant jumped out of the car to snatch her purse, but the victim fought back. Defendant told Mr. Knight that "[w]e shot her." Mr. Knight knew that Defendant had traded his Lexus for a Ford Mustang shortly after the incident. Mr. Knight knew Defendant had a handgun and had seen him with it after the shooting. In his statement to police, Mr. Knight stated that he had seen Defendant with a gun the day of the shooting.

Eric Mhoon, owner of Upgrade Auto Sales, had known Defendant since Defendant was five years old. He sold a 2006 dark gray Lexus GS300 to Defendant in 2014. Mr. Mhoon accepted the Lexus as a trade for a 2002 Ford Mustang on August 7, 2015. The windows on the Lexus were not tinted when Mr. Mhoon sold the car to Defendant, and they were not tinted when the car was traded in. Mr. Mhoon identified Defendant's Lexus as the same make, model, and color as the one in a photo shown to him by the police. Defendant stopped by Mr. Mhoon's house about 9:00 on the morning of the shooting, and he borrowed money from Mr. Mhoon.

Defendant and Mr. Bowen both chose not to testify at trial. Defendant filed a motion for new trial, and the trial court denied Defendant's motion. It is from that denial that Defendant now appeals.

*Analysis*

On appeal, Defendant argues that the trial court erred in denying the motion in limine regarding prejudicial statements by Mario Brodnax, that the trial court erred in

denying the motion to bifurcate the felon in possession of a handgun charge, and that the evidence was insufficient to support Defendant's convictions.

## *1. Prejudicial Statement*

Defendant argues that the trial court erred by denying the motion in limine regarding Mr. Brodnax's statement. The State argues that the trial court properly denied Defendant's motion.

Evidence must be relevant to be admissible. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice is generally defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978); *see State v. Young*, 196 S.W.3d 85, 106 (Tenn. 2006) ("Prejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror.'") (internal citation omitted).

Evidence of other crimes, wrongs, or bad acts is not admissible to prove the character of a person to show action in conformity with that character. Tenn. R. Evid. 404(b). Such evidence may be admissible, however, for "other purposes." *Id*. Our Supreme Court has determined that such "other purposes" include demonstrating motive or intent and the identity of the defendant. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). Such evidence is admissible for other purposes provided that the trial court: (1) upon request, holds a hearing outside the jury's presence; (2) determines that a material issue exists other than conduct conforming with a character trait, and upon request, states the basis for its determination; (3) finds proof of the other crime, wrong, or act to be clear and convincing; and (4) determines that the probative value of the evidence is not outweighed by the danger or unfair prejudice. Tenn. R. Evid. 404(b). The safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of prior crimes, wrongs, or acts. *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002). When a trial court substantially complies with the procedural requirements of Rule 404(b), the standard of appellate review of the trial court's decision is abuse of discretion. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003); *James*, 81 S.W.3d at 759. A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.

*State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). If the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference. *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997). Our supreme court recently stated that the abuse of discretion standard of review is a "less rigorous review" of a trial court's decision and does not permit this Court to substitute its judgment for that of the trial court. *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). On review, courts should determine "(1) whether the factual basis for the [trial court's] decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Id.* (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)) (citations omitted).

Defendant field a Motion in Limine on the morning of the second day of trial to exclude the statement by Mr. Brodnax regarding an alleged additional homicide. Specifically, Defendant argues that Mr. Brodnax's testimony that Defendant told him that Defendant now has "two under his belt," and that Mr. Brodnax understood that to mean "two bodies," was prejudicial to Defendant. Without citing which rule of evidence the trial court offended, Defendant argues in his brief that the jury could reason that Defendant admitted to not only the murder of the victim in this case but a second murder that had nothing to do with this case. The trial court held a hearing outside the presence of the jury. At the hearing, Defendant argued that such a statement violated Tenn. R. Evid. 404(b). The trial court found that the material issue could be construed as an admission by Defendant and can be admitted as an exception to hearsay. *See* Tenn. R. Evid. 803. The trial court stated:

> It is not a 404(b) prior bad act that the State is attempting to prove. They are not attempting to prove that [Defendant] has, in fact, engaged in killing two people, having two bodies under his belt. But just a statement of [Defendant] that a jury could infer that he is, in fact, admitting to a killing.

The trial court determined that Defendant's statement to Mr. Brodnax constituted an admission against penal interest by Defendant under Tennessee Rules of Evidence 803(1.2). The trial court also determined that Mr. Brodnax's opinion about the term "two under his belt" meaning "two bodies," was admissible under Tennessee Rules of Evidence 701 as an opinion from a lay witness.

The proof of Defendant's involvement in the victim's death is beyond clear and convincing. Further, the probative value outweighed any unfair prejudice to Defendant. While the record demonstrates the State did not strictly follow the appropriate procedure

for impeaching its own witness with a prior recorded statement, we conclude that the trial court did not abuse its discretion in admitting the challenged portion of Mr. Brodnax's refreshed testimony. *See* Tenn. R. Evid. 803(5) (authorizing the sponsoring party to read into evidence a recorded recollection).

Additionally, any concerns regarding the jury's possible use of the statement "two bodies under the belt" was addressed by the trial court with its instruction to the jury regarding evidence of Defendant's admission against interest. The trial court instructed the jury:

> Evidence has been introduced in this trial of a statement or statements made by [Defendant] made outside the trial, to show a confession or an admission against interest. A confession is a statement by a defendant that he committed the crime charged. An admission against interest is a statement by a defendant that acknowledges the existence or truth of some fact necessary to be proven to establish the guilt of the defendant or which tends to show guilt of a defendant or is evidence of some material fact, but not amounting to a confession.
>
> While this evidence has been received it remains your duty to decide if in fact such statement was ever made. If you believe [Defendant] did not make a statement, you should not consider it. If you decide a statement was made by a defendant, you must judge the truth of the facts stated. In so determining, consider the circumstances under which the statement was made. Also, consider whether any of the other evidence before you tends to contradict the statement in whole or in part. You must not, however, arbitrarily disregard any part of any statement, but rather should consider all of any statement you believe was made and is true. You are the sole judge of what weight should be given such statement. If you decide that [Defendant] made a statement, you should consider it with all other evidence in the case in determining the defendant's guilt or innocence.

7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 42.11 (2019 ed.)

The jury is presumed to follow the instructions of the trial court. *State v. Reid*, 164 S.W.3d 286, 323 (Tenn. 2005). Defendant has failed to establish that the trial court abused its discretion in admitting the statement, and he is not entitled to relief on appeal.

### *2. Bifurcation*

Defendant argues that the trial court erred in denying the motion to bifurcate the charge of convicted felon in possession of a handgun. The State argues that the trial court did not abuse its discretion by denying the motion.

As pertinent to our review, Tennessee Code Annotated section 39-17-1307(b)(1)(B) provides that a person commits an offense "who unlawfully possesses a firearm" and "[h]as been convicted of a felony drug offense." There was no dispute that Defendant had a qualifying prior felony conviction for drug offenses.

Defendant makes no argument that the counts of the indictment were improperly joined, arguing, instead, that the trial court erred in denying his motion to bifurcate the convicted felon in possession of a handgun offense. Defendant claims that he "did not receive a fair trial with his prior felony conviction weighing in the mind of the jurors while his guilt or innocence of other charges was still being determined" and that the trial court should have "allowed bifurcation of the charges to promote a fair determination of [D]efendant's guilt or innocence." Defendant concedes that there does not appear to be any case law stating that bifurcation is necessary, but points to *State v. Foust*, which states:

> [W]e note that the better procedure where, as here, the defendant is charged with offenses involving the use of violence and force and also charged with the status offense of unlawful possession of a firearm for having a similar prior felony conviction would be to bifurcate the proceedings . . . .

482 S.W.3d 20, 46-47 (Tenn. Crim. App. 2015). In *Foust*, the defendant argued that the trial court had not allowed him to offer the stipulation that he had been convicted of prior felonies without disclosing that the felony was for a violent offense. *Id*. The State argues that this case is distinguishable from *Foust*. We agree with the State.

Here, the trial court allowed Defendant to stipulate that he had been convicted of drug- related felonies and that he had been made aware it would be a felony to possess a firearm. Further, unlike the prior felonies in *Foust*, the defendant's previous drug-related convictions are dissimilar to the current charges against Defendant. *See id.* "While *Foust* recommended bifurcation, none of the opinions of this [C]ourt have required bifurcation." *State v. Stephan Richardson*, No. 2016-02227-CCA-R3-CD, 2018 WL 821775, at *16 (Tenn. Crim. App. Feb. 9, 2018), *no perm. app. filed*. Additionally, the trial court instructed the jury that it may consider the stipulation only as it related to the elements of possession of a handgun by a convicted felon and for no other purpose. The trial court in this case properly instructed the jury, and the jury is presumed to follow the instructions of the court. *See State v. Martin Boyce*, No. W2012-00887-CCA-R3-CD, 2013 WL 4027244, at *12 (Tenn. Crim. App. Aug. 6, 2013), *no perm. app. filed* (citing

*Banks*, 271 S.W.3d at 134; *see* Tenn. R. Crim. P. 14(b)(2). Moreover, our supreme court has held that, with respect to status offenses, like the unlawful possession of a handgun offense at issue here, "specific reference[s] to [a] defendant's prior felonies" are "relevant to establish an essential element of the crime for which the defendant is being tried." *State v. James*, 81 S.W.3d 751, 760-61 (Tenn. 2002)); see also *Foust*, 482 S.W.3d at 47. We conclude that the trial court did not err[4] in denying Defendant's motion to bifurcate the felon in possession of a handgun count of the indictment; however, we feel constrained to note that bifurcation is indeed the better procedure. Defendant is not entitled to relief.

### 3. Sufficiency of the Evidence

Defendant argues that the evidence presented at trial was insufficient to support his convictions. The State maintains that the evidence was sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial

---

[4] We note that had we found error with the trial court's decision, the error would have been harmless as Defendant did not make a motion to bifurcate the felon in possession of a firearm charge causing the jury to hear about Defendant's prior convictions regardless of the outcome on the motion to bifurcate the felon in possession of a handgun charge.

- 11 -

evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Tennessee Code Annotated section 39-13-202(a)(2) defines first degree murder, in part, as a "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, . . . , robbery, burglary, [or] theft." Tennessee Code Annotated section 39-17-1307(b)(1)(B) makes it an offense for someone convicted of a felony drug offense to possess a firearm. Tennessee Code Annotated section 39-17-1307(c)(1) makes it an offense for someone convicted of a felony to possess a handgun. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). Especially aggravated robbery occurs when a robbery is accomplished with a deadly weapon and the victim suffers serious bodily injury. T.C.A. § 39-13-403. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Tennessee Code Annotated section 39-12-101 defines criminal attempt as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result" and "acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id*. §39-11-302(a), (b). "In order for a killing to occur 'in the perpetration of' the felony, the killing must be 'done in pursuance of the unlawful act, and not collateral to it.'" *State v. Kiser*, 284 S.W.3d 227, 286 (Tenn. 2009) (quoting *Farmer v. State*, 296 S.W.2d 879, 883 (Tenn. 1956)). No culpable mental state is required for a felony murder conviction except the intent to commit the underlying felony. T.C.A. § 39-13-202(b). "[I]ntent to commit the underlying felony must exist prior to or concurrent with the commission of the act causing the death of the victim." *State v. Buggs*, 995 S.W>2d 102, 105 (Tenn. 1999). "Proof that such intent to commit the underlying felony existed before, or concurrent with the act of killing is a question of fact to be decided by the jury after consideration of all the fact and circumstance." *Id*. "[A] jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing." *Id*. at 108.

In this case, Defendant was charged with 2 counts of first degree felony murder, one count of attempted especially aggravated robbery, one count of a felon in possession of a firearm, and one count of a felon in possession of a handgun. It is clear from the record that Defendant and Mr. Bowen were present at the location of the victim's shooting. Mr. Bowen indicates he heard a gunshot in his statement to police. Mr. Bowen looked over his shoulder and saw Defendant running back to the car. Defendant and Mr. Bowen both indicated in their statements that they were looking to steal a license plate tag. Although both Defendant and Mr. Bowen admitted that a black handgun was in the car with them in their statement to police, neither claims to have had a weapon. Defendant admitted his involvement in and presence at the murder. Defendant, Mr. Bowen, Ms. Rezos, Ms. Orthaver, and Mr. Smith each heard a gunshot, and it did not come from the victim's gun. Mr. Knight and Mr. Brodnax both provided information that Defendant told them that he had been involved in the killing, and both men had seen Defendant with a black handgun. Mr. Knight provided information that Defendant saw the victim withdraw cash from an ATM and followed her to rob her. Defendant pulled up to the house behind the victim and tried to take her purse. The victim fought back and Defendant saw the victim's gun. Defendant told Mr. Knight that "we shot her." Cell phone records indicate that Defendant was in the vicinity. The car on the video from the scene is the same make, model and color as Defendant's car.

Defendant had a plan to steal a license plate or rob the victim, and as a result the victim was killed. The State's witnesses provided further proof that the Defendant was in the vicinity, possessed a handgun, and planned to rob the victim. Further, the Defendant stipulated to having a felony drug conviction. Based on the record, we find that there is

more than enough evidence that a reasonable jury could conclude that Defendant was guilty of murder in the perpetration of theft, murder in the perpetration of a robbery, criminal attempt of especially aggravated robbery, and felon in possession of a firearm or a handgun. The evidence was sufficient to support his convictions. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE