# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JUNE SESSION, 1998



FILED

September 1, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 02C01-9709-CC-00352** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **MADISON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. FRANKLIN MURCHISON** |
| **MONTEZ ANTUAN ADAMS,** | **)** | **JUDGE** |
| **RICARDO MAXWELL, &** | **)** | |
| **MARCUS LAMONT** | **)** | |
| **WILLOUGHBY,** | **)** | |
| | **)** | |
| Appellants. | **)** | (Felony-Murder; Aggravated Burglary) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF MADISON COUNTY

FOR THE APPELLANT:

SCOTT KIRK
Attorney for Appellant Adams
213 E. Lafayette
Jackson, TN 38301

CHRISTY RAUCHLE LITTLE
Attorney for Appellant Maxwell
200 East Main, Suite 111
Jackson, TN 38301

J. COLIN MORRIS
Attorney for Appellant Willoughby
204 West Baltimore
Jackson, TN 38301

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JERRY WOODALL
District Attorney General

DONALD H. ALLEN
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302

OPINION FILED _____

AFFIRMED AS MODIFIED

DAVID H. WELLES, JUDGE

# OPINION

The Defendants, Montez Adams, Ricardo Maxwell, and Marcus Lamont Willoughby, pursuant to Tennessee Rule of Appellate Procedure 3(b), appeal as of right their convictions for first degree felony murder, especially aggravated burglary, conspiracy to commit especially aggravated burglary, and theft over $500. In addition, Defendant Maxwell appeals his sentence on the four convictions.

All Defendants contest the sufficiency of the evidence presented to convict them of felony murder. Defendants Adams and Willoughby assert that they were not tried by an impartial jury, in violation of their right to a fair trial, and that the convictions for felony murder and especially aggravated burglary should have been merged. Finally, Defendant Maxwell alone asserts that the trial court erred in denying a severance, that the jury engaged in misconduct in violation of his right to a fair trial, and that the trial court erred in assessing him the maximum sentence available. We conclude, as the State concedes, that Defendants' convictions for especially aggravated burglary must be vacated, convictions for aggravated burglary entered, and sentences modified accordingly. We find no merit in Defendants' other assignments of error and affirm the remainder of the judgment of the trial court.

In September 1996, Defendants were indicted by the Madison County Grand Jury on charges of first degree felony murder in violation of Tennessee Code Annotated § 39-13-202, especially aggravated burglary in violation of § 39-

14-404, conspiracy to commit especially aggravated burglary in violation of § 39-12-103, and theft of property valued over $500 in violation of § 39-14-103. Following a jury trial, all Defendants were convicted of all charges in April 1997. Each Defendant received a life sentence for felony murder, and sentences for the remaining three offenses were ordered to run concurrently with the life sentence. Maxwell and Willoughby were sentenced as Range I offenders and Adams was sentenced as a Range II offender. The trial court denied Defendants' motions for a new trial, and all Defendants timely appealed.

## I. SUFFICIENCY OF THE EVIDENCE
### A. Adams, Maxwell, & Willoughby

Adams, Maxwell, and Willoughby contest the sufficiency of the evidence presented to convict them of felony murder. Specifically, the only issue for examination with respect to all three Defendants is whether the State introduced proof sufficient to demonstrate that the murder of Antonio Givens was committed in furtherance of the burglary. Defendants contend that the murder was committed after the burglary had been completed, and thus, was a separate, distinct, and independent act collateral to the burglary. We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[findings] of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963);

see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below, Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836)); likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

Here, Defendants were convicted of first degree felony murder: "A killing of another committed in the perpetration of or attempt to perpetrate any . . . burglary." Tenn. Code Ann. § 39-13-202(a)(1). A murder is committed in the perpetration of a crime when it is performed pursuant to, rather than collateral to, commission of the felony. Farmer v. State, 296 S.W.2d 879, 883 (Tenn. 1956) (emphasis added); State v. Brown, 756 S.W.2d 700, 702 (Tenn. Crim. App. 1988). To amplify, the supreme court has stated, "'The killing must have had an intimate relation and close connection with the felony . . . , and not be separate, distinct, and independent from it . . . .'" Farmer, 296 S.W.2d at 883 (quoting Wharton on Homicide § 126).

-4-

The State presented evidence at trial revealing an agreement by Adams, Maxwell, Willoughby, and Marquel Horton[1] during the day of June 2, 1996, to "run up in," or rob, the home of victim Antonio Givens. According to Horton, Defendants met each other at Maxwell's residence, and Horton then drove them to the victim's house in his mother's car. Willoughby broke down the back door of the home, and Defendants entered, each drawing a weapon.[2] Defendants searched the house and found a nine millimeter Intertech handgun underneath Givens' mattress. Shortly after Defendants entered, Horton saw a black car approaching the house. He called a warning to the others and ran out the back door toward a wooded, brushy area behind the home.

Horton then heard two gunshots as he escaped into the back of the property; a neighbor also testified to hearing two gunshots. Defendants Adams and Willoughby caught up to Horton soon thereafter, but Maxwell had abandoned the scene and his whereabouts were unknown. Horton asked the two Defendants who fired the shots, and Willoughby replied that he had fired them both. To elude police, Defendants walked for approximately three hours before arriving at a convenience store; telephoning Adams' girlfriend, Patricia Maxwell (Defendant Maxwell's sister), to pick them up; and going back to Maxwell's house.

---

[1] Marquel Horton testified for the State as part of a plea agreement resolving his indictment for identical offenses. Much of the State's evidence regarding the events of June 2-3, 1996, is derived from Horton's testimony at trial.

[2] Adams carried a .45 automatic, Maxwell carried a nine millimeter, and Willoughby carried a .38 revolver.

State witness Bernard Robinson, a friend of victim Givens, testified that he and Givens returned to the residence at nearly midnight on June 2. Robinson and the victim noticed that heat-sensitive lights on the back of the house were "blinking," that Givens' dogs were barking, and that a vehicle (later identified as registered to Marquel Horton's mother) was parked outside the house. According to Robinson, Givens drew a gun and approached the back of the house. As the victim rounded the corner from the front of the house, Robinson heard two gunshots and at least one person running through the woods. Givens ran from the back of the house toward Robinson, and Robinson carried the victim across the street to seek help from a nurse who lived nearby. Givens died in the early morning of June 3 from one gunshot wound to the chest fired from his own nine millimeter Intertech gun, a weapon which was later found by police in Defendant Maxwell's bedroom closet.

Defendants' argument that Givens' murder was committed upon the completion of the burglary must fail. The facts of this case are quite similar to those of State v. Hopper, 695 S.W.2d 530 (Tenn. Crim. App. 1985), in which the defendant's accomplice in a robbery shot and killed a Memphis police officer during a high-speed chase. Id. at 533-34. Hopper claimed that the officer had not been killed in the perpetration of the robbery, and that his felony murder conviction should therefore be reversed. Id. at 535. This Court rejected Hopper's argument, stating that the officer had been killed while the defendant and his accomplice were fleeing the scene of the robbery: "Their flight was part and parcel of the robbery event, and was not collateral to it. Clearly, the killing of Officer Sykes had 'an intimate relation and close connection' to the robbery of Ms. Mayham, and was not 'separate, distinct, and independent from it.'" Id. at

535-36 (quoting <u>Farmer v. State</u>, 296 S.W.2d 879, 883 (Tenn. 1956)); <u>see also</u> <u>State v. Brown</u>, 756 S.W.2d 700, 702-03 (Tenn. Crim. App. 1988).

Similarly, in <u>Brown</u>, a victim of robbery was killed when the perpetrators discovered that he had only six dollars. We affirmed the defendant's felony murder conviction, holding:

> The proof shows that the defendants killed the victim because they were angry that he had only a small amount of money and because they believed that his death would prevent them from being identified as the robbers. <u>The fact that the murder occurred after the robbery was completed does not make the murder collateral to the robbery</u>. The jury reasonably could conclude, as the verdict shows it did, that the murder was accomplished in order to prevent identification of the defendants by the victim.

<u>Brown</u>, 756 S.W.2d at 703 (emphasis added); <u>see also</u> <u>State v. Donald C. Lee</u>, C.C.A. No. 03C01-9607-CR-00277, Knox County (Tenn. Crim. App., Knoxville, May 28, 1997), <u>perm. to appeal denied</u> (Tenn. 1998) (finding that murder occurred during perpetration of robbery when police engaged in a chase twenty-five minutes later that resulted in a death, and defendant had not yet reached a "place of temporary safety" from the robbery).

Here, Defendants were fleeing from the scene of the burglary and theft when the killing occurred. The facts demonstrate that Defendants were in the process of executing the burglary and its underlying theft at the time the victim arrived home. In addition, the evidence indicates that the crime would have continued but for the interruption causing them to flee; and the victim was shot for his attempts to thwart the crime and in facilitation of Defendants' escape from the scene. We conclude that sufficient evidence existed by which a jury could

find that this murder was committed in "close connection to," and thus, in perpetration of a felony.

Defendants urge a different result based upon this Court's opinions in State v. Severs, 759 S.W.2d 935 (Tenn. Crim. App. 1988), and State v. Derenzy Turner, C.C.A. No. 02C01-9512-CR-00390, Shelby County (Tenn. Crim. App., Jackson, June 11, 1997), perm. to appeal denied (Tenn. 1998). In Severs, we held that when the death results from an attempt to thwart the felony rather than perpetrate it, and when the death is proximately caused by one other than the accused or an accomplice, the murder is not committed in furtherance of the felony, but instead collateral to it. Severs, 759 S.W.2d at 938. Such a situation is clearly not before this Court.

The facts of Turner differ slightly from those of Severs because the intended victim killed a third-party bystander, rather than a co-perpetrator. Turner, C.C.A. No. 02C01-9512-CR-00390, slip op. at 9-10. In Turner, the jury found the intended victim of robbery guilty of second degree murder of the bystander. Id. We noted that, in order to so find, the jury must necessarily have concluded that the robbery had ended and that the intended robbery victim did not act in self-defense. Id. The jury verdict of second degree murder indicated that the facts supported "a separate, knowing act" of murder. Id. This is also not the case before this Court, and we affirm the conviction of each Defendant for felony murder.

*B. Maxwell*

Defendant Maxwell raises one additional issue relating to sufficiency of the evidence: he complains that the evidence was insufficient to show his participation in the acts charged because the only testimony implicating him was that of Marquel Horton, an accomplice. Maxwell contends that an accused cannot be convicted based upon the uncorroborated testimony of an accomplice and that the jury should have been so instructed.

The record does reflect that the trial court did not instruct the jury that testimony of an accomplice must be corroborated. However, we need not decide whether the trial court had a duty to provide the instruction under these facts because we find that, even if the failure was error, the error was harmless. The testimony necessary to corroborate an accomplice's testimony "may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged." Henley v. State, 489 S.W.2d 53, 56 (Tenn. Crim. App. 1972) (citing Sherrill v. State, 321 S.W.2d 811 (Tenn. 1959)). ; see also State v. Bigbee, 885 S.W.2d 797, 803-04 (Tenn. 1994).

Here, police found in Maxwell's bedroom closet a nine millimeter handgun that the accomplice, Horton, testified Maxwell carried in the burglary. In addition, police found the nine millimeter weapon that belonged to the victim and caused his death in the same location. We believe this evidence more than satisfies the State's burden of corroboration in this case. Therefore, the jury was given evidence sufficient to support its finding that Maxwell participated in the events

at hand, and any error by the trial court in failing to provide an instruction on corroboration was harmless.

## II. IMPARTIAL JURY

Defendants Adams and Willoughby claim an abridgment of their right to a fair trial because of a "tainted" jury panel. This argument has two prongs: First, Defendants contend that the venire was comprised of too few potential jurors. Second, Defendants argue that their panel was not impartial because it had previously rendered guilty verdicts in several first degree murder cases, including two capital cases. We reject this assignment of error and find no violation.

The crux of Defendants' first argument is that jurors were selected even after the point at which Defendants had been "forced to exhaust all of their peremptory challenges." Although the record does not clearly demonstrate whether all peremptories had been exercised, we need not determine this fact. A jury is not rendered "tainted" simply because Defendants exhaust their allotted number of peremptory challenges. Moreover, the record reflects that a new panel of potential jurors was ready and available had the original venire been depleted.

In addition, Defendants contend that the final juror, selected after peremptories had been exhausted, should have been removed for cause. The record does not reflect that this final juror was ever challenged for cause by any of the parties; therefore, we have no alleged error presented for review. Furthermore, we would find no abuse of discretion by the trial court even if this juror had been challenged for cause but not excused. The record reveals a

lengthy and comprehensive examination of the juror, during which he ultimately expressed the unqualified ability to follow the law without partiality.

Defendants' argument that the jury was impartial because it had previously been seated during the term for first degree murder cases must also be rejected. Although the record indicates that four jurors in this case had indeed decided such prior cases, the record must also demonstrate prejudice on the part of Defendants. We find no such prejudice here. Counsel for Defendants brought this matter to the attention of the trial judge, who responded, "I am very comfortable with this jury, and when I say 'comfortable' I mean that I feel like there is a jury in the box, all of whom would be fair and impartial to the State and to the defendants." (R. at Vol. II, 51-52.) The record reveals nothing that would call into question the impartiality of a particular juror;[3] therefore, we conclude that the trial judge did not abuse his discretion. See Trail v. State, 526 S.W.2d 127, 129 (Tenn. Crim. App. 1974) (following Warden v. State, 381 S.W.2d 247, 250 (Tenn. 1964)), to hold that jurors are not rendered impartial simply by virtue of hearing "an earlier, similar and related case"); State v. Percy McIntosh, C.C.A. No. 88-230-III, Robertson County (Tenn. Crim. App., Nashville, Feb. 16, 1989), perm. to appeal denied (Tenn. 1989).

## III. MERGER OF FELONY MURDER AND UNDERLYING FELONY

Defendants Adams and Willoughby also assert that their convictions for especially aggravated burglary should have been dismissed or merged with their

---

[3] We also note that no specific instances have been alleged by either Defendant.

-11-

felony murder convictions. Neither dismissal nor merger is appropriate in this case, but we reduce the conviction for especially aggravated burglary to aggravated burglary.

In State v. Blackburn, 694 S.W.2d 934 (Tenn. 1985), our supreme court held that a criminal defendant can constitutionally be tried and convicted for first degree felony murder and the underlying felony in a single trial. Id. at 936. The "key issue," according to the supreme court, is "whether the legislature intended cumulative punishment." Id. In a prosecution for felony murder and the underlying felony, the court concluded, there is no double jeopardy violation requiring dismissal or merger because "[t]he two statutes are directed to separate evils. Id. (citing Albernaz v. United States, 450 U.S. 333, 343 (1981)); see also State v. Denton, 938 S.W.2d 373, 377 n.11 (Tenn. 1996) (in dictum, retaining this rule in light of clarified double jeopardy analysis); State v. Lewis, 919 S.W.2d 62, 69 (Tenn. Crim. App. 1995); State v. Brown, 756 S.W.2d 700, 703 (Tenn. Crim. App. 1988).

Defendants may not, however, be convicted of both felony murder and especially aggravated burglary. See Tenn. Code Ann. § 39-14-404(d). The legislature has prohibited such multiple prosecution: "Acts which constitute an offense under this [especially aggravated burglary] section may be prosecuted under this section or any other applicable section, but not both." Id. This Court has construed § 39-14-404(d) to prohibit the factor of "serious bodily injury" from being used to constitute especially aggravated burglary and to enhance or comprise an element of another offense. See State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993); State v. Oller, 851 S.W.2d 841, 843 (Tenn. Crim.

App. 1992); State v. Jehiel Fields, C.C.A. No. 03C01-9607-CC-00261, Bradley County (Tenn. Crim. App., Knoxville, Mar. 18, 1997). The State acknowledges that the especially aggravated burglary convictions cannot stand. We therefore modify the convictions for all Defendants to aggravated burglary, and we reduce the sentences as follows: Adams, from twenty years to ten years;[4] Maxwell, from twelve years to six years; and Willoughby, from twelve years to six years.[5]

## IV. DENIAL OF SEVERANCE

Maxwell alone complains that the trial court improperly denied his motion to sever the proceedings and that this denial was prejudicial. The trial court possesses great discretion to grant or deny severance of properly joined defendants, and "the court's decision will not be reversed unless it clearly prejudiced the defendant." State v. Hutchison, 898 S.W.2d 161, 166 (Tenn. 1994) (citing State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981)). In addition, "[m]ere hostility between defendants, attempts to cast the blame for the offense on each other, or other 'finger pointing and tattling will not, standing alone, justify the granting of [a] severance on the ground the defendants' respective defenses are antagonistic.'" State v. Mabry, C.C.A. No. 01C01-9112-CC-00369, Davidson County (Tenn. Crim. App., Nashville, June 19, 1992), perm. to appeal denied (Tenn. 1992) (quoting United States v. Arruda, 715 F.2d 671, 679 (1st Cir. 1983)). We find neither abuse of that discretion nor clear prejudice in this case.

---

[4] The trial court found Adams to be a Range II offender and applied the maximum Class B sentence of twenty years. Accordingly, we reduce his sentence to the maximum penalty available for a Range II Class C felony.

[5] The trial court found Maxwell and Willoughby to be Range I offenders and applied the maximum Class B sentence of twelve years. Accordingly, we reduce his sentence to the maximum penalty available for a Range I Class C felony.

Maxwell identifies three portions of allegedly inappropriate testimony to support his claim of prejudice, but does not identify any prejudicial use of the testimony. In two of the cited instances, Defendant's counsel objected to the offensive testimony, and the trial court sustained the objection and ordered the testimony stricken from the record. We have no reason to believe that the jury considered this testimony in deliberations.

In the third instance, Horton testified that Defendant Willoughby stated, "He fired twice." Maxwell asserts that the context of questioning incorrectly indicated that Willoughby's statement implicated another Defendant, rather than himself.[6] However, the record reflects that any confusion was clarified on redirect by the State:

> Q. (By Mr. Allen) Mr. Horton, I believe you said that when y'all were in the woods, and [Willoughby] and [Adams] came out into the woods, you asked, "Who shot;" is that correct?
>
> A. Yes, sir.
>
> Q. And what did [Willoughby] tell you?
>
> A. He just said -- he said, "I fired two times."
>
> Q. All right. And who was he referring to?
>
> A. Who was he referring to -- who shot the person? He said, "he did."
>
> Q. Talking about himself?
>
> A. Yes, sir.
>
> Q. He never said that anybody else shot?
>
> A. No, sir.

_____

[6] To clarify, it is the difference between (1) Horton testifying, "Willoughby said he fired twice" (implicating Willoughby), and (2) Horton testifying, "Willoughby said, 'He fired twice'" (implicating either Adams or Maxwell).

Q.    Just himself?

A.    Yes, sir.

Any confusion concerning the misleading cross examination of Horton was undoubtedly cured by the State's redirect examination. In addition, we have no evidence tending to show that the jury failed to disregard any objectionable statements stricken from the record. We must reject this assignment of error by Defendant Maxwell.

## V. JURY MISCONDUCT

In his next issue for review, Maxwell argues that jury misconduct violated his right to a fair trial. Specifically, he claims that at least two jurors found him "not guilty" in the initial vote during deliberations. He presented an affidavit from a juror in support of his motion for a new trial, in which a juror disclosed that a statement by counsel indicating that all three Defendants were at the scene caused those jurors to find Maxwell guilty.[7]

Maxwell cites a good portion of the body of law regarding when (and by what evidence) a jury verdict may be impeached, but we find it unnecessary to delve into the legal landscape of this issue. First, the juror who provided the supporting affidavit was <u>not</u> one of the two initially finding Maxwell "not guilty." The affiant stated that she "personally thought that Mr. Maxwell was there [at the scene]," but that it was her "<u>opinion</u> that the people who had voted not guilty on the first call <u>perhaps</u> would not have changed their mind" had they not relied on the statement by counsel. (Emphasis added.) Second, the offensive statement has been described but has not been cited to the record with any particularity.

---

[7] Maxwell's counsel argued in closing that Maxwell was not present at the scene.

Third, the statement complained of, allegedly made during questioning of a witness, was made by Maxwell's own counsel. We simply decline to hold that Defendant may assign error when the jury listens to the questions asked by his attorney in the course of questioning a witness. Jury misconduct has not been established.

## VI. APPLICATION OF THE MAXIMUM SENTENCE

Maxwell's final argument is that the trial court erred in sentencing him to the maximum penalty available for burglary, conspiracy, and theft.[8] Although this Court must conduct a de novo review when a criminal defendant appeals the length, range, or manner of service of sentence; the legislature has imposed a "presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned, however, upon proper consideration by the trial court of the sentencing principles in Tennessee Code Annotated § 40-35-103. State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Following review, we find no errors and affirm the decision of the trial court.[9]

For Defendant Maxwell, the trial court found two enhancement factors: First, "the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range . . . ; and the defendant was ajudicated [sic] to have committed deliquent [sic] act or acts which

---

[8] After finding Maxwell to be a Range I offender, the trial court sentenced him to twelve years for especially aggravated burglary, four years for conspiracy to commit aggravated burglary, and two years for theft.

[9] We affirm the decision to apply the maximum available penalty. Maxwell's burglary sentence stands reduced pursuant to modification of his conviction from especially aggravated burglary to aggravated burglary. See supra Part III.

would constitute a felony." Second, the court found that the defendant possessed a firearm during commission of the offense.

Both enhancement factors are well borne out by the facts: Defendant's juvenile convictions include three thefts of property under $500, attempted theft under $500, two thefts over $500, two counts of aggravated burglary, six additional felony thefts, vehicle burglary, auto theft, another theft, possession of a deadly weapon, vehicle theft over $1,000, and vehicle theft over $5,000. With respect to the second enhancement factor, Marquel Horton testified at trial that Maxwell carried a nine millimeter handgun during the course of the burglary. In addition, police located this gun and the victim's gun, the murder weapon, in Maxwell's bedroom closet; and Defendant presented no evidence tending to show that anyone other than Maxwell placed the firearms in his possession. We conclude that the trial court properly applied these enhancement factors to increase Defendant's sentence from the minimum in the range.

Maxwell tendered three mitigation factors: that his participation in the offense was minor, that there was no evidence to show he fired a weapon, and that he lacked substantial judgment because of his youth. The trial court rejected all three factors, and we find no abuse of discretion in his doing so.

Maxwell challenges the rejection of only one of his proposed mitigating factors—that he lacked substantial judgment because of his youth. He cites State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993), and State v. Carter, 908 S.W.2d 410 (Tenn. Crim. App. 1995), for the proposition that the trial court should have accepted this mitigating factor. In Adams, our supreme court affirmed the

trial court's rejection of this factor based upon facts dissimilar to this case but nevertheless tending to show that the defendant did not lack judgment because of his youth. 864 S.W.2d at 33. Likewise, this Court approved the rejection of the same factor in Carter, based upon a finding that "the defendant was sufficiently mature to understand the nature of his conduct." 908 S.W.2d at 413.

According to Adams, a court presented with this mitigating factor "should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." 864 S.W.2d at 33. We are convinced that the trial judge below weighed the above considerations. Although Defendant Maxwell committed these crimes at the age of 16, we find no abuse of discretion in concluding that his youthful age did not cause a lack of substantial judgment.

The judgment of the trial court is therefore reversed as to the especially aggravated burglary convictions and affirmed as to the remainder of the convictions. We vacate the conviction for especially aggravated burglary and order instead entry of convictions for aggravated burglary. The Defendants' sentences for aggravated burglary are set as follows: Adams, 10 years; Maxwell, 6 years; and Willoughby, 6 years. All sentences are to be served concurrently.

_____
DAVID H. WELLES, JUDGE

CONCUR:

-19-

_____

JOE G. RILEY, JUDGE

_____

DAVID R. FARMER, SPECIAL JUDGE