IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

**STATE OF TENNESSEE v. CHRISTOPHER GLENN CLARK**

**Appeal from the Circuit Court for Montgomery County**
**No. 2022-CR-791   William R. Goodman, III, Judge**

_____

**No. M2024-01204-CCA-R3-CD**

_____

A Montgomery County jury convicted the defendant, Christopher Glenn Clark, of first-degree premeditated murder, Tenn. Code Ann. § 39-13-202(a)(1); first-degree murder in perpetration of a felony, *id*. § 39-13-202(a)(2); burglary of a building other than a habitation, *id*. § 39-13-1002(a)(1); theft under $1000, *id*. § 39-14-103; unlawful possession of a firearm after having been convicted of a prior violent felony, *id*. § 39-17-1307(b)(1)(A); and unlawful possession of a firearm after having been convicted of a prior felony drug offense, *id*. § 39-13-1307(b)(1)(B).  After a sentencing hearing, the defendant received an effective sentence of life plus twenty-five years in confinement.  On appeal, the defendant contends the evidence presented at trial was insufficient to support his convictions for first-degree premeditated murder, murder in perpetration of a felony, and burglary.  Additionally, he contends the trial court erred in sentencing him to consecutive terms.  Upon our review of the record, the parties' briefs, and the applicable law, we affirm the defendant's convictions.  However, we also conclude the trial court failed to make the required findings in support of its sentencing determinations, and therefore, vacate the defendant's consecutive terms and remand the case for a new sentencing hearing to determine the appropriateness of consecutive terms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

J. ROSS DYER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Gregory Smith, Clarksville, Tennessee, for the appellant, Christopher Glenn Clark.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Robert J. Nash, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On March 1, 2022, the defendant visited his life-long friend, Miranda Foy. The two spent the evening visiting in Ms. Foy's bedroom until Ms. Foy left the room to put her daughter to bed for the evening. When Ms. Foy returned to the room some thirty to forty-five minutes later, she discovered that the defendant had left and that her High Point .380 caliber handgun and three loaded magazines were missing from the safe beside her bed. Ms. Foy also noticed that her yellow driving glasses were missing. Based on her discovery and concerned with what the defendant might do with her gun, Ms. Foy called 911. In addition to informing the 911 operator of what had been stolen, she also provided a description of the defendant's clothing—red shoes, red jacket, red pants, and a red shirt. When officers responded to her home, she also provided them with a picture she had taken with the defendant that evening at 11:03 p.m.

After leaving Ms. Foy's house, the defendant went to the Walmart on Fort Campbell Boulevard. According to several witnesses, the Walmart was roughly a twenty-minute walk or ten-minute drive from Ms. Foy's residence. At that time, however, the store closed at 11:00 p.m. due to COVID-19 precautions. Per the store's security footage, the defendant initially approached the doors on the general merchandise side of the store at 11:48:37 p.m.; however, when the automatic doors did not open, the defendant walked to the grocery side of the store. When the automatic doors to the grocery side of the store did not open, the defendant pried the doors open and entered the store. According to the store's security footage, it was 11:49 p.m. when the defendant gained entry to the store. Once inside, the defendant walked through the closed-off self-checkout area. He then walked through other parts of the store eventually grabbing several snacks. The defendant returned to the self-checkout area, stopped and grabbed more items, and then exited the store without paying for the items. Once outside, the defendant remained within 30 feet of the front doors.

The security footage showed that as the defendant exited the self-checkout area, the victim, Billy Eakes—a Walmart employee, walked toward the store's exit and then exited the store a few seconds after the defendant. After seeing the victim exit the store, the defendant briefly turned a corner, put the food items on a ledge, and then walked back around the corner. The victim and the defendant briefly faced each other, and the victim informed the defendant, "Hey, you know we're closed at this time, man." In response, the defendant shrugged his shoulders and appeared to turn as if he was going to walk away. However, rather than doing so, the defendant drew his weapon, turned back towards the victim, and then shot the victim eleven times. According to the medical examiner, the

victim died as a result of multiple gunshot wounds and his manner of death was homicide. The entire incident—from the initial entrance until the shooting—took less than five minutes. The shooting and the defendant's actions were witnessed by multiple bystanders and captured on the store's video security system. The security footage was played for the jury.

When officers arrived, they found the victim lying on the ground and immediately began searching for the shooter by creating a perimeter and soliciting information from bystanders. During the search, Officer Brandan Hendricks advanced towards a nearby shopping center. As he approached, Officer Hendricks noticed the defendant exiting a wooded area and walking towards a Planet Fitness gym located in the shopping center. Upon seeing the defendant, Officer Hendricks drove to his location, exited his cruiser, and held the defendant at gunpoint until backup arrived. Within a few moments, Officer David Hauser, who had initially responded to the 911 call at Ms. Foy's residence, arrived on the scene and provided support for Officer Hendricks. Together, the officers detained the defendant. According to the officers, the defendant was "very calm" during their interaction with him. Law enforcement also searched the surrounding area with the aid of a K-9 unit. During the search of the woods, the K-9 located the High Point .380 caliber handgun and magazine that had been stolen from Ms. Foy.

*Analysis*

On appeal, the defendant argues the evidence presented at trial was insufficient to support his convictions for first-degree premeditated murder, murder in the perpetration of a felony, and burglary.[1] Additionally, the defendant contends the trial court erred in imposing partial consecutive sentences. The State insists the evidence is sufficient, and while recognizing the trial court's sentencing determination is not entitled to a presumption of reasonableness, the State argues the defendant's sentence should be affirmed upon a de novo review by this Court. Upon our review of the evidence presented, we affirm the defendant's convictions. However, our review of the record also reveals that the trial court failed to make the required findings in support of its sentencing determinations, and therefore, we vacate the imposition of consecutive terms and remand for a proper hearing and findings regarding the same.

---

[1] The defendant does not challenge his convictions for theft and two counts of unlawful possession of a firearm. Therefore, we will only address those convictions challenged by the defendant.

- 3 -

## I. Sufficiency

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

### A. First-Degree Murder – Premeditation

In challenging his conviction for first-degree premeditated murder, the defendant does not contest the fact that he shot the victim. Rather, the defendant, relying on the size differential between himself and the victim, challenges the finding of premeditation, arguing that "this is a manslaughter case" in which the defendant acted under stress and in the heat of passion. The State insists the defendant's actions and the record support a finding of premeditation. We agree with the State.

First-degree murder is the "premeditated and intentional killing of another[.]" Tenn. Code Ann. § 39-13-202(a)(1). "Premeditation" is defined as:

> The intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

*Id.* § 39-13-202(d). As this court has found, "[p]roof of premeditation is inherently circumstantial." *State v. Gann*, 251 S.W.3d 446, 455 (Tenn. Crim. App. 2007). "The trier of fact cannot speculate what was in the killer's mind, so the existence of premeditation must be determined from the defendant's conduct in light of the circumstances surrounding the crime." *Id.* The following are non-exclusive factors a jury may consider to infer premeditation: (1) use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) declarations by the defendant of an intent to kill; (4) evidence of procurement of a weapon; (5) preparations before the killing for concealment of the crime; (6) calmness immediately after the killing; (7) a lack of provocation on the victim's part; and (8) a defendant's failure to render aid to a victim. *State v. Clayton*, 535 S.W.3d 829, 845 (Tenn. 2017) (first citing *State v. Davidson*, 121 S.W.3d 600, 615 (Tenn. 2003); and then citing *Finch v. State*, 226 S.W.3d 307, 318-19 (Tenn. 2007)).

Here, the State presented the jury with sufficient evidence to conclude that the defendant acted with premeditation when he killed the victim, Billy Eakes. Viewing the evidence in the light most favorable to the State, the jury could have inferred premeditation based on the lack of provocation by the victim. While the defendant claims that the stress of being followed by someone larger in stature than himself caused him stress and that he acted in the heat of passion, the record shows that the victim calmly followed the defendant out of the store and simply informed the defendant that the store was closed. The record is void of any proof that the victim was aggressive towards the defendant or provoked him in any way. In addition to the lack of provocation on the part of the victim, the jury could have also inferred premeditation from these additional facts—the defendant procured the weapon by stealing it from Ms. Foy immediately prior to the murder; the defendant shot an unarmed victim; the defendant shot the victim eleven times; the defendant failed to render aid; the defendant fled the scene of the murder and attempted to dispose of the murder weapon; and the defendant appeared calm immediately after the incident when he was apprehended by law enforcement. Clearly, the evidence presented at trial supported the finding of premeditation on the part of the defendant. Accordingly, the evidence sufficiently supports the defendant's conviction for first-degree murder, and the defendant is not entitled to relief.

**B. Burglary**

Next, the defendant challenges the sufficiency of the evidence supporting his conviction for burglary. More specifically, the defendant argues that the store was open to the public when he entered because the doors were not locked, and therefore, the State could not establish burglary. The State insists the evidence is sufficient to sustain the defendant's conviction. We agree with the State.

As charged in this matter, "[a] person commits burglary who, without the effective consent of the property owner enters a building other than a habitation . . . not open to the public, with the intent to commit a [], theft[.]" Tenn. Code Ann. § 39-13-1002(a)(1).

The defendant contends that the State failed to prove burglary because the evidence showed the doors were unlocked and because customers frequently open the doors and enter the store after hours. However, contrary to the defendant's claim, a breaking can be established by merely opening an unlocked door. *State v. Smith*, No. 03-C-01-9208-CR-00269, 1993 WL 170178, at *2 (Tenn. Crim. App. May 20, 1993), *perm. app. denied* (Tenn. Oct. 4, 1993) (citing *Goins v. State,* 192 Tenn. 32, 237 S.W.2d 8 (1950)). Kenneth McGilvery, the overnight manager for the store, testified that the store closed at 11:00 p.m. and that at that time they would cut the power to the doors so that they would not automatically open; however, the doors were not locked immediately upon closing because several employees were still in the store working. According to Mr. Mullins, who worked in the store's loss prevention office, Mr. McGilvery, and the store's security footage, the defendant entered the store at 11:49 p.m., almost an hour after the store had closed. Contrary to the defendant's claim, the store was not open to the public at the time the defendant entered the store and did so without the owner's consent. Additionally, testimony from witnesses and the store's security footage showed the defendant pick up several items and leave the store without paying for them. Accordingly, the evidence is sufficient to sustain the defendant's conviction for burglary, and the defendant is not entitled to relief.

**C. Murder in Perpetration of a Felony**

Finally, the defendant contends the evidence is not sufficient to support his conviction for murder in perpetration of a felony. In addition to his claim that the State failed to prove the underlying felony of burglary as discussed *supra,* the defendant also claims that "even if a burglary existed, there was a clear break where [the defendant] abandoned whatever endeavor he was doing by entering the store when [the defendant] left and walked around the corner of the building." Upon our review of the record and the applicable law, we conclude the evidence is sufficient to support the defendant's conviction.

- 6 -

As pertinent to our review, first-degree felony murder is the "killing of another committed in the perpetration of or attempt to perpetrate . . . [a] burglary[.]" Tenn. Code Ann. § 39-13-202(a)(2). "No culpable mental state is required for conviction" of first-degree felony murder, "except the intent to commit the enumerated" offense. Tenn. Code Ann. § 39-13-202(b). As noted *supra*, "A person commits burglary who, without the effective consent of the property owner enters a building other than a habitation . . . not open to the public, with intent to commit a [], theft[.]" Tenn. Code Ann. § 39-13-1002(a)(1).

Having already determined the evidence was legally sufficient to support a conviction for burglary, we turn to the defendant's claim that there was a significant break between the burglary and the murder. "The felony murder rule applies when the killing is 'done in pursuance of the unlawful act, and not collateral to it.'" *State v. Thacker*, 164 S.W.3d 208, 223 (Tenn. 2005) (quoting *Farmer v. State*, 296 S.W.2d 879, 883 (Tenn. 1956)). Nonetheless, "[t]he killing may precede, coincide with, or follow the felony and still be considered as occurring 'in the perpetration of' the felony offense, so long as there is a connection in time, place, and continuity of action." *Id*. (internal quotation marks omitted) (quoting *State v. Buggs*, 995 S.W.2d 102, 106 (Tenn. 1999)). The jury "may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing." *Id*. (internal quotation marks omitted) (quoting *Buggs*, 995 S.W.2d at 106).

In the instant matter, the proof revealed that the defendant entered the Walmart, took several items without paying, and then exited the building before being confronted by the victim. The proof also revealed that the shooting took place within thirty feet of the entrance to the store and on Walmart property. Additionally, and in direct contravention to the defendant's claim that there was a break between the burglary and the murder, the proof revealed that the entire incident from the defendant's entry into the store to his shooting of the victim took roughly five minutes. Viewed in a light most favorable to the State, the evidence clearly established that the murder was connected to the burglary "in time, place, and continuity of action" and, therefore, sufficient to sustain the defendant's conviction. *See Thacker*, 164 S.W.3d at 223. The defendant, therefore, is not entitled to relief.

## II. Sentencing

The defendant contends the trial court failed to make findings supporting the imposition of consecutive sentences. He insists that this Court should review the sentence de novo and align his sentences concurrently. The State concedes that the trial court failed to make the requisite findings and agrees that the record is sufficient to support de novo

review by this Court but maintains that the consecutive alignment of the sentences should be affirmed. We agree with the parties that the partial consecutive alignment of the defendant's sentences is not presumptively reasonable. However, based on the complete lack of findings by the trial court in support of consecutive terms, we conclude the appropriate remedy is to vacate the consecutive terms and remand to the trial court to make the appropriate findings.

When a defendant challenges the length or range of a sentence, this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. The presumption is overcome when the record demonstrates that the trial court's decision is contrary to the purposes and principles of sentencing. *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (citing *Bise*, 380 S.W.3d at 706).

The standard of review adopted in *Bise* applies to decisions by trial courts regarding consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). This means that the reviewing court will give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Id.* at 861. When imposing consecutive sentences, the trial court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705).

Here, the record reflects that the trial court failed to make any findings or cite specific facts from the case to support the imposition of partial consecutive sentences. The entirety of the trial court's sentencing ruling for all six convictions, including two first degree murder convictions, consists of six pages of transcript. The trial court initially summarized the facts of the case and then noted which enhancement factors it found applicable to the defendant's sentences. The trial court then simply announced the length of each sentence. The only mention of consecutive terms by the trial court was – "Count Five, a twenty-five-year sentence, will run consecutive to Count One." The trial court failed to make any findings concerning whether the sentence imposed was "justly deserved

in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); *Imfeld*, 70 S.W.3d at 708. Accordingly, this Court cannot presume the imposition of consecutive sentences for the defendant was reasonable or defer to the trial court's exercise of discretion.

In *Pollard*, our supreme court explained that, when facing this situation, this Court has two options: "(1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." *Pollard*, 432 S.W.3d at 864 (citing *Bise*, 380 S.W.3d at 705 & n.41). Based on the sparse record, we conclude that remanding this matter to the trial court is the appropriate remedy.

Accordingly, we vacate the imposition of consecutive sentencing and remand to the trial court for a new sentencing hearing. The new sentencing hearing is limited to consideration of the appropriateness of consecutive terms.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed, and the case is remanded for a sentencing hearing consistent with this opinion.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE